IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| BNSF RAILWAY COMPANY, | ) ) ) | |
| Defendant. | ) | Demand for Jury Trial |

## COMPLAINT

### NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices based on sex and to provide appropriate relief to Rena Merker and other aggrieved individuals who were adversely affected by such practices. As alleged in greater particularity below, Defendant BNSF Railway Company allowed supervisors and coworkers to sexually harass Merker and other female employees, creating a hostile work environment.

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42, U.S.C. § 1981a.

3. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices were committed within the jurisdiction of the United States District Court for the District of Nebraska.

**PARTIES**

4. Plaintiff, the Equal Employment Opportunity Commission ("EEOC" or "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5. Defendant BNSF Railway Company ("BNSF" or "Defendant") is a Delaware corporation doing business in the State of Nebraska.

6. BNSF is a Class I railroad operating in 28 states, including Nebraska.

7. At all relevant times, BNSF has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

**ADMINISTRATIVE PROCEDURES**

8. More than thirty days prior to the institution of this lawsuit, Rena Merker timely filed a charge of discrimination (Charge No. 564-2018-00833) with the Commission. Ms. Merker's charge alleged violations of Title VII on behalf of herself and similarly aggrieved women.

9. The Commission sent Defendant timely notice of Ms. Merker's charge.

10. On November 24, 2020, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated Title VII.

11. The Letter of Determination invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

12. The Commission communicated with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

13. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

14. On April 8, 2021, the Commission issued a Notice of Conciliation Failure to Defendant.

15. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

16. From October 2011through the present, Defendant has engaged in unlawful employment practices, in violation of Section 703 of Title VII, 42 U.S.C. §§ 2000e-2. The unlawful practices include subjecting Merker and other similarly aggrieved women working out of Defendant's Alliance, Nebraska railyard to a near daily barrage of sexually harassing conduct by both coworkers and supervisors. The conduct included sexual comments, derogatory comments and slurs about women, circulation of nude pictures and photographs, and other sexual and hostile actions toward female employees.

17. Defendant hired Rena Merker, female, as a Conductor at its Alliance, Nebraska, railyard on October 31, 2011.

18. Merker reported to individuals who held the position of Train Master. Train Masters reported to individuals who held the position of Terminal Manager. Train Masters and Terminal Managers at the Alliance, Nebraska, railyard reported to Jeff Stevens, Superintendent.

19. As a Conductor, Merker operates a locomotive with an Engineer. Merker and the assigned Engineer were the only individuals present on the locomotive during its operation, which could last up to twelve hours per day. Merker works with several Engineers because the Engineer with whom she is assigned may vary from day to day.

20. Merker was subjected to and observed sexual harassment from the outset of her employment. For instance, in or around 2011 or 2012, a male Conductor told Merker that several male employees voted that "you have the best ass out here."

21. Later in 2012, a male coworker asked Merker why she always wore a coat and asked if it was because she did not want anyone to see her "tits." He added that he heard her "tits" were "nice."

22. Another male Conductor made comments to her and other female employees that "women are cunts" and "women should not be working here."

23. Other male employees shared this sexist sentiment. A male Engineer told Merker she only got help from their Train Master because Merker is "a chick." The same Engineer commented "women are bitches" and that other women employed with Defendant were looking for a husband, were all ugly, and were "stupid whores."

24. Similar types of harassing comments based on sex have been made to Merker and other female employees occurred almost daily throughout Merker's employment from 2011 to the present.

25. Merker opposed this harassment by reporting it to her supervisors. For instance, she reported the male Engineer's comments that "women are bitches" and "stupid whores" to Sam Roberts, Road Foreman. Roberts responded that the male Engineer had a rough life and did not elaborate further or say what action he would take to address the comments.

26. On another occasion, Merker told Patrick Hartman, Train Master, and Roberts that a male Engineer spread the rumor that Merker was "sleeping around" on a work trip and stated working on the road "was not a woman's job." Hartman and Roberts laughed and responded, "Welcome to the railroad."

27. Defendant's supervisors were complacent and, at times, endorsed and participated in the harassment of Merker and other female employees. For instance, in or around 2016, Road Foreman Alex Adams shared with employees a photo of a naked female Conductor. The female Conductor ultimately quit after her picture was circulated to multiple employees.

28. Defendant also failed to meaningfully address sexual graffiti that was perpetually present in its Alliance, Nebraska, facility and on the locomotives. For instance, a drawing in the women's locker room of a woman sucking a penis above an eye wash station was not removed.

29. In addition, on multiple occasions, male employees drew crude sexual images, including penises and vaginas, in the unisex restrooms on locomotives or around the seat where female employees worked.

30. This sexual graffiti has been present on Defendant's locomotives and on the walls of the Alliance, NE railyard from at least 2011 to the present.

31. The unisex locomotive restrooms were frequently soiled with urine and feces by male employees, despite knowing the few women riding the trains would need to use them. On one occasion, a male Engineer told Merker he intentionally rubbed his penis on the locomotive

phone and urinated on the toilet seat and walls of the locomotive bathroom because the female employee riding with him was trying to get him in trouble for sexual harassment.

32. As a result of the abhorrent sexually hostile environment, Merker suffered from stress that led to her missing work and losing her hair. At one point, a doctor told Merker she may have to choose between her health and her job with Defendant.

33. On July 18, 2017, Merker called Road Foreman Alex Adams and reported Engineer Mark Jones for cursing and yelling at her. Merker told Adams that Jones would not have yelled and cursed at her if she were a man. Adams agreed and said he would talk to Jones about the situation.

34. On July 21, 2017, Merker left a voicemail for BNSF Assistant Vice President Human Resources & Diversity, Kim Cummings, stating she wanted to file an EEO complaint. On July 23, 2017, Human Resources Director MacKenzie Ostrander called Merker about her message. Merker told Ostrander she would only communicate about her concerns in writing and stated that she feared retaliatory actions because of her complaints. However, Defendant did not initiate an investigation of Merker's concerns at that time.

35. Following Merker's EEO complaint, the sexually hostile work environment continued. For instance, in January 2018 a fake video camera was discovered above a unisex locomotive restroom with a sign stating, "for research purposes only." And in January 2018, at a training class, Superintendent Jeff Stevens asked attendees to name items he had in a box as part of a situational awareness exercise. Stevens pulled out a thimble and a male attendee said it was another male coworker's condom. Stevens did not correct or otherwise react to the comment.

36. Since Defendant failed to adequately address the sexually hostile environment, and Merker feared retaliation, Merker filed a Charge of Discrimination with EEOC on January 18, 2018, on behalf of herself and other aggrieved individuals in non-management positions.

37. Defendant conducted an investigation of the allegations in Merker's Charge of Discrimination and concluded there was no evidence that male employees harassed or discriminated against Merker or other female employees. Defendant claims it inspected restrooms for inappropriate graffiti, briefed cab cleaners on removing such graffiti, and conducted training on its EEO policy.

38. Defendant's alleged efforts did not adequately address the harassing environment. In fact, a male coworker told Merker he was forced to go to training where some "fucking faggot" told attendees they could not call Merker "trainman" anymore. And sexual images continued to appear on the trains and in the Alliance, Nebraska railyard. For instance, Merker found a drawing of a naked woman on a train and a drawing of a penis and naked woman above the seat where she worked.

39. Merker broke her leg on February 16, 2018 and was off work until July 2018. Upon her return, she was asked by a male coworker if she was "going after" someone in Alliance because someone asked her to put her "tits" in her shirt. This coworker, and two others, told Merker they were instructed by Defendant not to talk to her.

40. On or about August 14, 2018, Merker reported to Senior Trainmaster William Boness several concerns since returning to work, including additional sexual graffiti she found and a sexual assault of a housekeeper by a male coworker at a hotel where employees stayed between trips.

41. On August 16, 2018, Merker met with Human Resource Manager Brooke Owens and Stevens and discussed her concerns. During the meeting, Owens suggested Merker personally remove offensive graffiti.

42. After Merker's meeting with Owens and Stevens the sexually inappropriate comments and graffiti continued.

43. On October 1 and 3, 2018, Merker found sexually explicit drawings on two separate locomotives: a drawing of a person bent over and exposing their buttocks and the statement "#TITSFORTOOTS and #TOOTSFORTITS". Merker took pictures and gave copies to the Train Masters on duty.

44. In July 2019, a framed picture of a man with his penis hanging out of his shorts was placed on a cabinet. All employees, including supervisors, walked by the picture daily, as it was posted at one of the main exits from the Alliance, Nebraska building.

45. The sexually explicit and hostile environment continues to the present date.

## STATEMENT OF CLAIMS

## COUNT I

(Title VII – Unlawful Harassment/Sex)

46. Plaintiff repeats, re-alleges and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

47. The sexually offensive comments, jokes, graffiti and other conduct toward Merker and similarly aggrieved women was unwelcome, intentional, severe, pervasive, and created a sexually hostile working environment.

48. Such conduct was egregious, humiliating, and intimidating.

49. Although Merker and others notified management of the unwanted offensive sexual comments and behavior, Defendant failed to take prompt, effective remedial action to end the harassment.

50. Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Merker's and other aggrieved individuals' federally-protected rights.

51. The effect of the practices complained of above has been to deprive Merker and similarly aggrieved women of equal employment opportunities and otherwise adversely affect their employment status because of their sex.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A. Issue a permanent injunction enjoining Defendant, its employees, agents, officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of sex, including the harassment of employees because of their sex in violation of 42 U.S.C. § 2000e-2(a);

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for female workers and eradicate the effects of its past and present unlawful practices;

C. Order Defendant to make whole Merker by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, in amounts to be determined at trial;

D. Order Defendant to pay Merker and other similarly aggrieved women punitive damages for its malicious conduct or reckless indifference described above, in amounts to be determined at trial;

E. Grant such other and further relief as this Court deems necessary and proper in the public interest; and

F. Award the Commission its costs in this action.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

LISA MORELLI
Acting Associate General Counsel

ANDREA G. BARAN, MO Bar No. 46520
Regional Attorney
U.S. Equal Employment
Opportunity Commission
St. Louis District Office
1222 Spruce St., Rm. 8.100
St. Louis, MO 63103
(314) 798-1914 (office)
(314) 406-2810 (mobile)
andrea.baran@eeoc.gov

_____
Lauren W. Johnston, OBA #22341
Senior Trial Attorney
U.S. Equal Employment
Opportunity Commission
Oklahoma Area Office
215 Dean A. McGee Ave., Suite 524
Oklahoma City, OK 73102
(405) 666-0379 (office)
(202) 227-7712 (mobile)
Lauren.johnston@eeoc.gov