IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 21-369-BCB-SMB |
| BNSF RAILWAY COMPANY, | ) ) ) |
| Defendant. | ) Demand for Jury Trial |

## FIRST AMENDED COMPLAINT[1]

### NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices based on sex and to provide appropriate relief to Rena Merker and other aggrieved individuals who were adversely affected by such practices. As alleged in greater particularity below, Defendant BNSF Railway Company allowed supervisors and coworkers to sexually harass Merker and other female employees, creating a hostile work environment.

### JURISDICTION AND VENUE

1.	Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2.	This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42, U.S.C. § 1981a.

---

[1] This Amended Complaint is filed pursuant to Fed.R.Civ.P. 15(a)(1)(B).

1

3. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices were committed within the jurisdiction of the United States District Court for the District of Nebraska.

**PARTIES**

4. Plaintiff, the Equal Employment Opportunity Commission ("EEOC" or "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5. Defendant BNSF Railway Company ("BNSF" or "Defendant") is a Delaware corporation doing business in the State of Nebraska.

6. BNSF is a Class I railroad operating in 28 states, including Nebraska.

7. At all relevant times, BNSF has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

**ADMINISTRATIVE PROCEDURES**

8. More than thirty days prior to the institution of this lawsuit, Rena Merker timely filed a charge of discrimination (Charge No. 564-2018-00833) with the Commission. Ms. Merker's charge alleged violations of Title VII on behalf of herself and similarly aggrieved women. See Exhibit 1.

9. The Commission sent Defendant timely notice of Ms. Merker's charge and the allegations Ms. Merker raised on behalf of similarly aggrieved women.

10. On November 24, 2020, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated Title VII by

subjecting Merker and other female employees at its Alliance, Nebraska location to harassment and sexual harassment, beginning as early as November 2011.  See Exhibit 2.

11. The Letter of Determination invited Defendant to join with the Commission in informal methods of conciliation to attempt to eliminate the alleged unlawful practices described therein, including by providing appropriate relief to Ms. Merker and other female employees working at Defendant's Alliance, Nebraska location.  See Exhibit 2.

12. The Commission communicated with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

13. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

14. On April 8, 2021, the Commission issued a Notice of Conciliation Failure to Defendant.

15. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

16. From October 2011 through the present, Defendant has engaged in unlawful employment practices, in violation of Section 703 of Title VII, 42 U.S.C. §§ 2000e-2.  The unlawful practices include subjecting Merker and other similarly aggrieved women working out of Defendant's Alliance, Nebraska railyard to a near daily barrage of sexually harassing conduct by both coworkers and supervisors.  The conduct included sexual comments, derogatory comments and slurs about women, circulation of nude pictures and photographs, and other sexual and hostile actions toward female employees.

17. Defendant hired Rena Merker, female, as a Conductor at its Alliance, Nebraska, railyard on October 31, 2011.

18. Conductors report to individuals who held the position of Train Master, a management-level position. Train Masters report to individuals who held the position of Terminal Manager. Train Masters and Terminal Managers at the Alliance, Nebraska, railyard reported to Jeff Stevens, Superintendent.

19. Yard Masters also work in the Alliance, Nebraska rail yard and report to Terminal Masters and Train Masters. Yard Masters are responsible for reviewing train schedules and switching orders and coordinating activities of the workers engaged in railroad traffic operations.

20. A Conductor operates a locomotive with an Engineer. The Conductor and the Engineer are the only individuals present on the locomotive during its operation, which could last up to twelve hours per day. Conductors work with several different Engineers because the locomotive assignments vary from day to day.

21. Merker was subjected to and observed sexual harassment from the outset of her employment.

   a. For instance, in or around 2011 or 2012, a male Conductor told Merker that several male employees voted that "you have the best ass out here."

   b. Later in 2012, a male coworker asked Merker why she always wore a coat and asked if it was because she did not want anyone to see her "tits." He added that he heard her "tits" were "nice."

   c. Another male Conductor made comments to her and other female employees that "women are cunts" and "women should not be working here."

   d. A male Engineer told Merker she only got help from their Train Master because Merker is "a chick." The same Engineer commented "women are

4

bitches" and that other women employed with Defendant were looking for a husband, were all ugly, and were "stupid whores."

22. Similar types of hostile and derisive comments based on sex have been made to Merker and other female employees almost daily throughout Merker's employment from 2011 to the present.

    a. For instance, in or around August 2018, two male employees complaining about a job were told by a third male employee that their "vaginitis" was acting up. This occurred in a room of approximately 15 BNSF employees, including a female conductor.

    b. On another occasion, in or around 2020, a male employee told a female Yard Master "you ain't my momma, you ain't shit to me and you're not going to tell me what to do." Male employees are commonly hostile to female Yard Masters but did not treat male Yard Masters with the same insubordinate attitude.

    c. A male employee constantly referred to women in the yard as "baby" or "baby girl," telling women "you smell so good" and "baby you look good today." Train Masters heard these comments but did nothing to oppose or otherwise stop the offensive comments.

    d. In or around 2019, a female employee asked Road Foreman Alex Adams for an updated first aid kit. She needed a bandage and showed Adams the only item in the first aid kit was a reflective blanket. Rather than help find her a bandage, Adams said "maybe you and I can use that [the blanket] and roll

around in it." This was said in the presence of other supervisors who did not object to the comment.

    e. In or around October 2019, during a pre-engineering class in Alliance, Nebraska, male trainees engaged in sexually explicit discussion in front of trainers but were not reprimanded. The discussion included sexual jokes and details of their sexual exploits.

23. Female employees, including Merker, have opposed this harassment by reporting it to supervisors.

    a. Merker reported the male Engineer's comments that "women are bitches" and "stupid whores" to Sam Roberts, Road Foreman. Roberts responded that the male Engineer had a rough life and did not elaborate further or indicate he would take any action to address the comments.

    b. On another occasion, Merker told Patrick Hartman, Train Master, and Road Foreman Roberts that a male Engineer spread the rumor that Merker was "sleeping around" on a work trip and told her that working on the road "was not a woman's job." Hartman and Roberts laughed and responded, "Welcome to the railroad."

24. Defendant's supervisors were complacent about and at times endorsed and participated in the harassment of Merker and other female employees. For instance, in or around 2016, Road Foreman Alex Adams shared with employees a photo of a naked female Conductor. The female Conductor ultimately quit after her picture was circulated to multiple employees.

25. Defendant also failed to meaningfully address sexual graffiti that was perpetually present in its Alliance, Nebraska, facility and on the locomotives from 2011 to the present. On multiple occasions, male employees drew crude sexual images, including penises and vaginas, in the unisex restrooms on locomotives or around the seat where female employees worked. Examples include:

   a. A drawing in the women's locker room of a woman sucking a penis above an eye wash station was not removed.

   b. Multiple drawings of penises on locomotive walls.

   c. On October 1 and 3, 2018, Merker found sexually explicit drawings on two separate locomotives: a drawing of a person bent over and exposing their buttocks and the statement "#TITSFORTOOTS and #TOOTSFORTITS." Merker took pictures and gave copies to the Train Masters on duty.

   d. In July 2019, a framed picture of a man with his penis hanging out of his shorts was placed on a cabinet. All employees, including supervisors, walked by the picture daily, as it was posted at one of the main exits from the Alliance, Nebraska building.

   e. The words "Lick it Linda" written on a locomotive on or about September 9, 2020.

   f. The words "S. Kramer likes cock" written on a locomotive on or about November 21, 2021.

26. Defendant has failed to take prompt, effective remedial action to rid its facilities of sexual graffiti. In or around 2018, a female conductor asked Superintendent Stevens what could be done about the graffiti. Stevens responded, "Just get a Sharpie. What is with you

women lately?" On another occasion, a female engineer who complained about the graffiti was told, "Just don't look at it."

27. The unisex locomotive restrooms were frequently soiled with urine and feces by male employees, despite knowing the few women riding the trains would need to use them. In fact, purposely soiling the locomotives is used as a form of harassment and expression of hostility toward women.

    a. On one occasion, a male Engineer told Merker he intentionally rubbed his penis on the locomotive phone and urinated on the toilet seat and walls of the locomotive bathroom because he believed the female employee riding with him was trying to get him in trouble for sexual harassment.

    b. On another occasion, in or around January 2020, a male Engineer urinated down the steps of a locomotive and on the handrails, causing the female Conductor to slip and place her hands on the wet handrails when she exited the locomotive to perform a train check. Her duties required her to get down on her hands and knees such that she could not avoid getting the urine on herself.

    c. A dead bird was left on the toilet seat of a female Conductor's train.

28. The unsanitary conditions of the restrooms led female employees on the trains to avoid using them to the point that at least two female employees contracted urinary tract infections in 2018 as a result of avoiding the restroom.

29. BNSF has been placed on notice repeatedly about the sexual harassment, sexual graffiti, and hostility toward women. For instance, on July 18, 2017, Merker called Road Foreman Alex Adams and reported Engineer Mark Jones for cursing and yelling at her. Merker

told Adams that Jones would not have yelled and cursed at her if she were a man. Adams agreed and said he would talk to Jones about the situation.

30. The next day, July 19, 2017, BNSF informed Merker that she would be subjected to a "low performance investigation," including a hearing, based on her attendance in June 2017 and an October 2012 warning for alleged "low performance," a term BNSF uses when a conductor has poor attendance and/or low availability for work.

31. On July 21, 2017, Merker left a voicemail for BNSF Assistant Vice President Human Resources & Diversity, Kim Cummings, stating she wanted to file an EEO complaint. On July 23, 2017, Human Resources Director MacKenzie Ostrander called Merker about her message. Merker told Ostrander she would only communicate about her concerns in writing and stated that she feared retaliatory actions because of her complaints. However, Defendant did not initiate an investigation of Merker's concerns at that time.

32. As a result of the "low performance investigation," on August 21, 2017, BNSF issued Merker a Level S 30 Day Record Suspension and placed Merker on a 3-year probationary period during which any violation would result in termination. This probation, initiated the day after Merker complained to Road Foreman Adams about Engineer Jones' sexist behavior, discouraged Merker from reporting additional harassment.

33. Following Merker's EEO complaint to BNSF Human Resources the sexually hostile work environment continued. For instance, in January 2018 a fake video camera was discovered above a unisex locomotive restroom with a sign stating, "for research purposes only." And in January 2018, at a training class, Superintendent Jeff Stevens asked attendees to name items he had in a box as part of a situational awareness exercise. Stevens pulled out a thimble

and a male attendee said it was another male coworker's condom. Stevens did not correct or otherwise react to the comment.

34. Since Defendant failed to adequately address the sexually hostile environment, and Merker feared retaliation, Merker filed a Charge of Discrimination with EEOC on January 18, 2018, on behalf of herself and other aggrieved individuals in non-management positions.

35. Defendant conducted an investigation of the allegations in Merker's Charge of Discrimination and concluded there was no evidence that male employees harassed or discriminated against Merker or other female employees. Defendant claims it inspected restrooms for inappropriate graffiti, briefed cab cleaners on removing such graffiti, and conducted training on its EEO policy.

36. Defendant's alleged efforts did not adequately address the harassing environment. In fact, a male coworker told Merker he was forced to go to training where some "fucking faggot" told attendees they could not call Merker "trainman" anymore.

37. Even after its training, BNSF itself contributed to creating a sexually charged atmosphere at its workplace by issuing t-shirts with sexualized "double-entendre" messages to its Alliance, Nebraska yard employees. The front of the T-shirts said "Shoving" and the back said, "Got Protection?"

38. Sexual images continued to appear on the trains and in the Alliance, Nebraska railyard. For instance, Merker found a drawing of a naked woman on a train and a drawing of a penis and naked woman above the seat where she worked.

39. Approximately three months after BNSF allegedly conducted sexual harassment training in response to Merker's Charge of Discrimination, someone placed copies of a nude

picture of a male employee's wife on the windshields of other employees' vehicles at Defendant's depot parking lot in Alliance, Nebraska.

40. Merker broke her leg on February 16, 2018 and was off work until July 2018. Upon her return, she was asked by a male coworker if she was "going after" someone in Alliance because someone asked her to put her "tits" in her shirt. This coworker, and two others, told Merker they were instructed by Defendant not to talk to her.

41. On or about August 14, 2018, Merker reported to Senior Train Master William Boness several incidents that happened after she returned to work, including additional sexual graffiti she found and a sexual assault of a housekeeper by a male coworker at a hotel where employees stayed between trips.

42. On August 16, 2018, Merker met with Human Resource Manager Brooke Owens and Stevens and discussed her concerns. During the meeting, Owens suggested Merker personally remove offensive graffiti. Owens further said Merker could keep reporting, but BNSF could not control her coworker's behavior.

43. After Merker's meeting with Owens and Stevens, the sexually hostile work environment persisted.

44. On December 1, 2019, a female Engineer trainee reported to HR Representative Brooke Owens that Engineer Chad Nelson tried to enter her hotel room after completing a trip. The female trainee rejected Nelson's advances, told him she was married, and told him she did not want to hang out with him. Despite this, Nelson came to her hotel room door, knocking and repeatedly calling out her name. Nelson was so insistent the female trainee put a chair up to the door to prevent Nelson from coming in her room. The Engineer was so frightened that she did not ride the train back with Nelson.

45. Owens initially told the female trainee she would handle the situation, but she later said that she and the supervisors felt it was best that they not talk to the Engineer about his behavior. Owens said they were concerned that talking to the male engineer could make things worse for the female trainee and her husband, who also worked for Defendant out of Alliance, and that it was not in their best interest for BNSF to address the situation with Nelson.

46. After her report to Human Resources, the female trainee was called to the office by Road Foreman Adams and another manager, who told her that she should bring any problems she had directly to them.

47. This was not the first time a male employee stalked a female employee at BNSF's Alliance, NE railyard. In or around 2016, a female employee reported a male employee was showing up at her assigned workstations after she broke off a romantic relationship. Upon information and belief, the male employee was using Defendant's computer systems to find her location. The male employee was also openly accosting the female in Defendant's parking lot before and after work, to the point other employees offered to escort her in the parking lot. After several weeks, the female employee reported the conduct to Trainmaster Lyle Horton. The male employee found out she was there and aggressively confronted her in Horton's office. The Alliance Police Department had to escort the female employee home. Although he was instructed not to contact the female trainee, the male employee confronted her again, telling her she made a mistake reporting him and that he did not "get in trouble" with Defendant.

48. The sexually explicit and hostile environment toward women continues to the present date, including but not limited to the incidents described above.

49. As a result of the abhorrent sexually hostile environment, Merker suffered from stress that led to her missing work and losing her hair. At one point, a doctor told Merker she may have to choose between her health and her job with Defendant.

50. Other aggrieved female employees suffer from similar emotional distress as a result of the harassment and Defendant's failure to adequately address the hostile work environment. Their symptoms include insomnia, ulcers, stress and anxiety, leading at least one female employee to take medication to address her symptoms.

## STATEMENT OF CLAIMS

### COUNT I

(Title VII – Unlawful Harassment/Sex)

51. Plaintiff repeats, re-alleges and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

52. The sexually offensive comments, jokes, graffiti and other conduct toward Merker and similarly aggrieved women was unwelcome, intentional, severe, pervasive, and created a sexually hostile working environment.

53. Such conduct was egregious, humiliating, and intimidating.

54. Although Merker and others notified management of the unwanted offensive sexual comments and behavior, Defendant failed to take prompt, effective remedial action to end the harassment.

55. Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Merker's and other aggrieved individuals' federally-protected rights.

56. The effect of the practices complained of above has been to deprive Merker and similarly aggrieved women of equal employment opportunities and otherwise adversely affect their employment status because of their sex.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A. Issue a permanent injunction enjoining Defendant, its employees, agents, officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of sex, including the harassment of employees because of their sex in violation of 42 U.S.C. § 2000e-2(a);

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for female workers and eradicate the effects of its past and present unlawful practices;

C. Order Defendant to make whole Merker by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, in amounts to be determined at trial;

D. Order Defendant to pay Merker and other similarly aggrieved women punitive damages for its malicious conduct or reckless indifference described above, in amounts to be determined at trial;

E. Grant such other and further relief as this Court deems necessary and proper in the public interest; and

F. Award the Commission its costs in this action.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

LISA MORELLI
Acting Associate General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

ANDREA G. BARAN, MO Bar No. 46520
Regional Attorney
U.S. Equal Employment
Opportunity Commission
St. Louis District Office
1222 Spruce St., Rm. 8.100
St. Louis, MO 63103
(314) 798-1914 (office)
(314) 406-2810 (mobile)
andrea.baran@eeoc.gov

*s/Lauren W. Johnston*
Lauren W. Johnston, OBA #22341
Senior Trial Attorney
U.S. Equal Employment
Opportunity Commission
Oklahoma Area Office
215 Dean A. McGee Ave., Suite 524
Oklahoma City, OK 73102
(405) 666-0379 (office)
(202) 227-7712 (mobile)
Lauren.johnston@eeoc.gov

**Certificate of Service**

I certify that on December 20, 2021, this document was filed with the Clerk of Court and, by operation of the ECR system, a copy served on:

| | |
|---|---|
| Bryan P. Neal | bryan.neal@tklaw.com, cynthia.sanders@tklaw.com, jerry.graham@tklaw.com, sherri.rodgers@tklaw.com |
| Nichole S. Bogen | nbogen@ldmlaw.com, ldmnotices@ldmlaw.com, sseeba@ldmlaw.com, tspahn@ldmlaw.com |
| Tyler K. Spahn | tspahn@ldmlaw.com, ldmnotices@ldmlaw.com, sseeba@ldmlaw.com |