## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| | ) | Case No. 21-369-BCB-SMB |
| Plaintiff, | ) | |
| | ) | PLAINTIFF EEOC'S BRIEF |
| v. | ) | OPPOSING DEFENDANT'S |
| | ) | MOTION TO DISMISS |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

The Equal Employment Opportunity Commission brings this suit under Title VII of the Civil Rights Act of 1964 to remedy and correct a sexually hostile work environment created by Defendant BNSF Railway Company at its railyard in Alliance, Nebraska. Over a period of at least ten years, BNSF allowed male employees and supervisors to subject women working at the railyard to pervasive unlawful sexual harassment. These women are not prone to complain because they are tough and they've seen retaliation. But BNSF knew how the women were treated because the company's supervisors saw it, sometimes participated in it, and were told about it. One of the women, Rena Merker, finally became so frustrated with the pervasive harassment and BNSF's refusal to stop it that she reported it to the EEOC. Merker's charge of discrimination led to the EEOC's investigation, determination that BNSF's actions

violated federal law, attempt to obtain voluntary compliance from BNSF, and, when the EEOC was unable to obtain compliance, this lawsuit.

BNSF asks this Court to dismiss the EEOC's suit, not because its complaint fails to provide a "short and plain statement" of the agency's claims as required by Fed. Rule Civ. Proc. 8, but because BNSF wants this Court – without any precedent – to apply the more demanding standard of Fed. Rule Civ. Proc. 56 and require the EEOC to plead every fact needed to survive a dispositive motion on the merits. Contrary to BNSF's assertions, the EEOC's First Amended Complaint (Doc. 10) meets and exceeds the pleading requirements of the federal rules. The quantity and character of the harassment alleged in the EEOC's complaint may give the impression that it recites every known and relevant fact. It does not, and the law does not require it to.

BNSF also asks this Court – again, without any precedent – to dismiss the EEOC's complaint because it does not identify the alleged aggrieved individuals by name. But BNSF failed to inform the Court of controlling Supreme Court precedent regarding the EEOC's obligation to identify aggrieved individuals during the agency's pre-suit process. That decision, *Mach Mining LLC v. EEOC*, 135 S. Ct. 1645 (2015), calls into doubt the Eighth Circuit *CRST* decision relied upon by BNSF, and plainly held that the EEOC's obligation is to inform an employer "which employees (*or what class of employees*)" suffered unlawful discrimination. *Id.* at 1656 (emphasis added). The EEOC met this obligation in both its administrative determination and in its complaint. Neither the Eighth Circuit nor the federal rules require more. But even if this Court does find some deficiency in the EEOC's amended complaint, the appropriate remedy is to grant leave for the agency to amend. For all these reasons, BNSF's motion to dismiss must be denied.

## ARGUMENT

In its bid to avoid defending its unlawful actions in court, BNSF asks this Court to ignore the pleadings standards set forth in the Federal Rules of Civil Procedure and take the drastic action of dismissing this class sexual harassment lawsuit because, BNSF alleges, the EEOC has not pleaded every fact that would be required to prove its claims to a jury or even to survive a motion for summary judgment. BNSF's Motion to Dismiss should be denied because the EEOC's complaint satisfies all requirements under Eighth Circuit precedent and the federal rules, and the EEOC may seek relief for aggrieved individuals without identifying them by name in its complaint. But even if this Court does find some deficiency in the EEOC's amended complaint, the appropriate remedy is to grant leave for the agency to amend.

**I.      BNSF's Motion to Dismiss should be denied because BNSF cannot satisfy the Rule 12(b)(6) standard for dismissal and the EEOC's amended complaint satisfies the Rule 8 notice pleading standard and *Iqbal / Twombly*.**

In its bid to avoid defending its unlawful actions in court, BNSF asks this Court to ignore the pleadings standards set forth in the Federal Rules of Civil Procedure and take the drastic action of dismissing this class sexual harassment lawsuit because, BNSF alleges, the EEOC has not pleaded every fact that would be required to prove its claims to a jury or even to survive a motion for summary judgment. But the EEOC's complaint meets every requirement of Federal Rules of Civil Procedure and Eighth Circuit and Supreme Court precedent. The agency's complaint properly sets forth a more-than-plausible hostile work environment claim and pleads more-than-sufficient facts to establish BNSF's liability. And contrary to BNSF's argument, no "portion" of the EEOC's hostile work environment claim is time-barred. Finally, BNSF challenges the EEOC's

complaint with inapplicable and distinguishable caselaw and asks this Court to apply incorrect legal standards.

In reviewing a motion to dismiss, the Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013). A claim cannot be dismissed merely because the trial court disbelieves the allegations or feels that recovery is remote or unlikely. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 545–46 (8th Cir. 1997). "Thus, as a practical matter, a dismissal under Fed. Rule Civ. Proc. 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 545–46 (8th Cir. 1997).

### A. The EEOC's complaint sets forth a short and plain statement of alleged facts sufficient to present a plausible hostile work environment claim.

To comply with Fed. Rule Civ. Proc. 8, a complaint must present a short and plain statement alleging only sufficient factual allegations to state a claim for relief that is "plausible" on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 570). "'[D]etailed factual allegations' are not required." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 440 U.S. at 555). Accordingly, the plaintiff must plead facts that plausibly suggest entitlement to relief and provide something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 78. It is not, however, a "probability requirement." *Id.* There is no "heightened pleading standard" for discrimination claims

and a discrimination plaintiff must comply only with Fed. Rule Civ. Proc. 8(a)'s liberal standards. *Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 510-14 (2002); *see also Twombly*, 550 U.S. at 569-70, n.14 (reaffirming *Swierkiewcz* and holding heightened pleadings standards are not required for employment discrimination claims). Accordingly, a plaintiff alleging discrimination need only give the defendant "fair notice" of what the plaintiff's claims are and the grounds upon which they rest. *Swierkiewicz,* 534 U.S. at 511.[1]

The Eighth Circuit has repeatedly confirmed that the courts must construe complaints liberally and a plaintiff pleading a Title VII discrimination claim need not set forth a detailed evidentiary proffer or plead a prima facie case in its complaint. *See, e.g., Warmington v. Bd. of Regents of the Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (citing *Swierkiewicz*, 122 S.Ct. at 512); *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020). The complaint must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 928 (8th Cir. 1993). Further, a court should review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Warmington*, 998 F.3d at 795; *Wilson v. Arkansas Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (the complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1121 (8th Cir. 2012); *Braden v. Wal-Mart Stores, Inc.,* 588

---

[1] For example, a plaintiff need only plead a violation of Title VII based on the sexual harassment; she need not specify whether it was of the quid pro quo or hostile environment variety. *See, e.g., Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir. 1978).

F.3d 585, 594 (8th Cir. 2009) (complaint should not be parsed piece by piece to determine plausibility).

A plaintiff is not required to plead facts establishing a *prima facie* case for their Title VII claim. *Swierkiewicz*, 534 U.S. at 512; *Warmington*, 998 F.3d at 796; *see also Wilson*, 850 F.3d at 372; *Ring*, 984 F.2d at 926–27. "[I]n *Swierkiewicz*, the Supreme Court 'negated any need to plead a prima facie case in the discrimination context and emphasized that the prima facie model is an evidentiary, not a pleading, standard.'" *Warmington*, 998 F.3d at 796. "Because the prima facie model is not a pleading standard, 'there is no need to set forth a detailed evidentiary proffer in a complaint.'" *Id.* (internal citation omitted); *see also EEOC v. PMT Corp.,* 40 F. Supp. 3d 1122, 1129-30 (D. Minn. 2014) (EEOC class complaint satisfied *Iqbal/Twombly* standard by identifying time period at issue, alleged perpetrator of the discrimination, and the alleged discriminatory conduct, giving defendant fair notice of the charges against it).

Although a plaintiff is not required to plead a prima facie case in its complaint, the elements of a prima facie case "may be used as a prism to shed light upon the plausibility of the claim." *Blomker*, 831 F.3d at 1056. To establish a sexually hostile work environment claim, a plaintiff must show: (1) the victims are members of a protected group; (2) they were subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of their employment; and (5) the employer knew or should have known of the harassment and failed to take appropriate remedial action. *Nichols v. Tri-National Logistics, Inc.,* 809 F.3d 981, 985 (8th Cir. 2016). A "hostile work environment" is established when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment.'" *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). A plaintiff must show the conduct created an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – and that the victim perceived it to be so. *Jenkins v. University of Minnesota*, 838 F.3d 938, 944-945 (8th Cir. 2016) (quoting *Harris,* 510 U.S. at 21).

In this case, the EEOC's complaint pleads ten pages of detailed examples of harassment based on sex that Merker and her female coworkers experienced at BNSF. The allegations include:

- offensive comments, sexual graffiti and images present in or passed around the workplace (Doc. 10, p. 7-8, ¶¶25-26);

- sexual propositions, sexualized comments about female employees' bodies, sexually explicit jokes, detailed stories about male employees' sexual exploits, and the use of sexualized or infantilized names for female employees (Doc. 10, p. 4 ¶21a-21b, p. 5 ¶22c, p. 6 ¶¶22d-22e, p. 11 ¶40);

- false rumors spread by male employees about Merker engaging in sexual behavior with male coworkers (Doc. 10, p. 6 ¶22d);

- a male Conductor telling Merker that several male employees had voted hers "the best ass out here," and another coworker telling her that her "tits" were "nice" (Doc. 10, p. 6 ¶21);

- nude photos of women – including a female Conductor – being passed around among male coworkers and supervisors (Doc. 10, p. 6 ¶24, p. 7 ¶25d, p. 10 ¶39);

- hostile comments related to female supervisory authority and the presence of women in the workplace in general, such as "women should not be working here" (Doc. 10, p. 4 ¶21c, p. 5 ¶22b, p. 6 ¶23b);

- gender slurs about and directed at women ("cunts," "bitches," "whores") (Doc. 10, p. 4 ¶21c-¶21d);

- intentional soiling of the work environment in the locomotives with urine and feces to interfere with female employees' use of bathroom facilities (Doc. 10, p. 8 ¶27);

- use of company resources to repeatedly stalk and accost a female employee on BNSF's premises (Doc. 10, p. 12 ¶47); and

- A male trainer's aggressive demand for access to a female trainee in her hotel room, to the point where she had to block access to her door, despite her repeated pleas for him to stop. (Doc. 10, p. 11 ¶44).

These allegations describe pervasive harassment in BNSF's Alliance, Nebraska facility and on the locomotives almost daily. (Doc. 10, p. 5 ¶22; p. 7 ¶25). The allegations span a period of over ten years. (Doc. 10, p. 4 ¶¶21(a)-21(b); p. 5 ¶¶22(a)-22(b), 22(d)-22(e); p. 6 ¶24; p. 7 ¶¶25, 25(c)-25(f), 26; p. 8 ¶¶27(b), 28-29; p. 9 ¶¶30-33; p. 10 ¶¶34, 39; p. 11 ¶44). The EEOC alleges BNSF knew or should have known about the harassment by identifying supervisors who observed or were informed about the harassing conduct by job title and/or name. (Doc. 10, p. 5 ¶22(d); p. 6 ¶¶23(a)-23(b), 24; p. 7 ¶26).

### B.   BNSF relies on inapplicable or distinguishable caselaw to attack the EEOC's complaint.

BNSF's argument that the EEOC has pleaded insufficient facts to state a plausible hostile environment claim is based primarily on two cases where the Eighth Circuit

affirmed the lower court's dismissal of hostile work environment claims on Rule 12 motions – *Blomker,* 831 F.3d 1051 and *Warmington,* 998 F.3d 789 – and a handful of unreported district court cases from other federal circuits.[2] BNSF uses these cases to argue that "even severe conduct may be insufficient to state a plausible hostile work environment claim when it lacks physical contact or physically threatening behavior and the alleged conduct is sporadic over a period of years." Def. Mem. at 5.

    In *Blomker,* the *pro se* plaintiff alleged seven incidents to support her harassment claim, which included male employees standing too close to her, blocking her from exiting her cubicle on one occasion, and noisily swinging her candy basket and playing with the candy. 831 F.3d at 1054. The Court's majority explained the dismissal by summarizing the plaintiff's allegations as including "seven incidents of harassment by two different men over a nearly three-year period." *Id.* Similarly, in *Warmington*,

---

[2] BNSF claims that "numerous other courts" have dismissed hostile work environment claims on Fed. R. Civ. P. 12 motions on the pleadings, citing four unreported district court cases, none from a district within the Eighth Circuit. BNSF Brief, p. 5-6, fn. 1. None of these cases – all of which involve very different claims and allegations – is helpful in analyzing the sufficiency of the EEOC's pleading in this case. In fact, they are all readily distinguishable from the facts in this case. *See Barreth v. Reyes I, Inc*., 2020 U.S. Dist. LEXIS 134806, 2020 WL 4370137 (M.D. Ga. July 29, 2020) (describing the allegations as a small handful of questions or comments to the plaintiff over a one-week period and applying an incorrect legal standard); *Milo v. Cybercore Techs., LLC*, 2019 U.S. Dist. LEXIS 160386, 2019 WL 4447400 (D. Md. Sept. 17, 2019) (the court found "a mere handful of incidents" of misgendering the plaintiff); *Ogletree v. Necco*, 2016 U.S. Dist. LEXIS 165566 (N.D. Ga. Nov. 9, 2016), adopted, 2016 U.S. Dist. LEXIS 165564 (N.D. Ga. Nov. 30, 2016) (plaintiff alleged a few incidents of harassment by two employees who worked in a different state and visited plaintiff's work site only a few times per year); and *Prince v. Cablevision Sys. Corp*., 2005 U.S. Dist. LEXIS 8147 (S.D.N.Y. May 6, 2005) (complaint alleged a single incident of sexual advances which occurred off the employer's premises).

998 F.3d at 795-796, the appellate court upheld dismissal by the district court, which held that the plaintiff's complaint "provided no hint" as to when or how often the harassing statements were made over a 10-year period and did not plausibly allege facts showing that the defendant knew or should have known of the incidents. *Id*.[3]

The facts of both *Blomker* and *Warmington* are readily distinguishable from this case. The conduct described in detail in the EEOC's First Amended Complaint (Doc. 10) is not sporadic, but pervasive, and is *also* egregious and physically threatening. *Blomker* and *Warmington* both involve allegations that are a far cry from the EEOC's allegations of widespread hostility toward women's very presence in the workplace at BNSF's Alliance railyard - the common use of gender slurs, perpetually-present sexualized offensive graffiti, sexual comments on women's bodies and behavior, circulation of nude photographs of females, and the like, in the instant case. Contrary to BNSF's assertion, these harassing actions were obviously directed toward female employees because of their sex. In addition, the EEOC has provided much more than a "hint" as to when and how often the harassment occurred. And, as described more in depth below, contrary to *Warmington*, the EEOC has alleged facts to show that BNSF knew or should have known of the harassment and that supervisors participated in and contributed to the hostile work environment. These facts plausibly give rise to an entitlement to relief.

Although much of the conduct in this case was physically threatening, the Eighth Circuit does not, as BNSF suggests, require physical touching or threatening conduct to

---

[3]The Eighth Circuit noted in *Warmginton* that a district court "is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Warmington,* 998 F.3d at 796. But the Court also reaffirmed that when there *are* well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

establish, much less plead, a case of hostile work environment. In *Warmington*, the Eighth Circuit cited to *Blomker's* "physical touching" or physical threat analysis as just one factor for district courts to examine in determining whether a plaintiff sufficiently pleads a claim for hostile work environment harassment. *Warmington*, 998 F.3d at 800. The Court noted other factors to be considered, including whether the incidents are sporadic or, as here, pervasive, and are so intimidating, offensive, or hostile that they poisoned the work environment. *Id.*

BNSF also claims that the harassment suffered by other employees, whether one or many, is irrelevant to individual harassment claims and cannot be used to show the severity or pervasiveness of the harassment experienced by an individual claimant. This is simply wrong. Even where courts have held that a plaintiff who is unaware of harassment of other employees or of other aspects of the work environment cannot use that evidence to support her *subjective* belief that the work environment was hostile or abusive, she may offer such evidence to show the work environment is *objectively* hostile or abusive. *See Williams v. Conagra Poultry Co.*, 378 F.3d 790, 793-94 (8th Cir. 2004) (reversing district court for failing to consider testimony of co-workers detailing a host of racially motivated harassment based on plaintiff's lack of awareness of the incidents because, although it could not be used to prove plaintiff found the workplace subjectively hostile, it is highly relevant to prove sexual harassment was severe and pervasive and that the defendant had constructive notice). It would be particularly erroneous in a class case to exclude evidence because one woman had not observed it. *See Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1014-15 (8th Cir. 1988) ("We also reject appellants' contention that the district court erroneously considered all of the women's

claims together in determining that the harassment was sufficiently pervasive and severe....").

BNSF is also wrong to suggest that the use of ordinary words in the English language such as "frequently" in a pleading equates to pleading legal conclusions. The only case BNSF cites for this assertion is the unreported *Barreth* case out of Georgia, cited in footnote 1 of BNSF's brief. In that case, the plaintiff used the word "frequently," but did not provide any dates of alleged harassment and described only one disparaging comment. In contrast, in its First Amended Complaint, the EEOC has described the frequency of the various types of pervasive harassment, using descriptors such as "near daily," "almost daily," "daily," and "perpetually present," and has included actual dates for a number of specific incidents. (Doc. 10, p. 3 ¶16, p. 5 ¶22, p.7 ¶¶25, 25(d)).  These detailed factual pleadings are hardly mere conclusions.

It is important to note that BNSF repeatedly relies on summary judgment or post-trial motion cases, including *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012) ("*CRST I*"), throughout its brief.[4] In these cases, the courts were analyzing an evidentiary record after a full and fair opportunity for discovery and utilizing the

---

[4] The only other Eighth Circuit case BNSF relies on for the proposition that courts have found "infrequent or episodic incidents and comments, without more" to be insufficient to support a hostile work environment claim" is a summary judgment case, *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759-60 (8th Cir. 2004). Bainbridge involved managers' alleged racially offensive remarks about Asians, made approximately once a month during the plaintiff's two years of employment, and racial slurs referring to other minorities. This conduct is clearly distinguishable from this case where continuing, egregious harassment was directed at Merker and the other aggrieved individuals based on the same protected class status over a period of more than ten years.

summary judgment standard set out at Fed. Rule Civ. Proc. 56.[5] Yet BNSF cites to such

cases in its Rule 12(b)(6) motion to suggest that the courts' conclusions that the

plaintiffs in those cases lacked sufficient *proof* of an essential element of their claim at

summary judgment means that particular type of evidence must be described in a

complaint to properly *plead* a sexual harassment claim. The consideration of factors

courts consider in evaluating a hostile environment claim is an inquiry appropriate at

summary judgment on a fully-developed record, not a motion to dismiss. *See, e.g.,*

*Nichols v. Tri-National Logistics, Inc.*, 809 F.3d 981, 985 (8th Cir. 2016) (reversing

grant of summary judgment to defendant because whether the employee subjectively

perceived her coworker's actions as offensive is a fact issue precluding summary

judgment); *Friedlander v. Edwards Lifesciences LLC*, No. 0:16-cv-01747, 2017 U.S.

Dist. LEXIS 165559, at *11-12 (D. Minn. Oct. 5, 2017). In *Friedlander*, the district court

rejected the defendants' Rule 12(b)(6) motion, explaining, ". . . the cases that

Defendants cite as support for their argument are overwhelmingly summary judgment

---

[5] The other cases cited BNSF cites for this proposition on pages 8-9 of its brief are inapposite to this case, not only factually, but procedurally—they are post-discovery summary judgment or post-trial cases. *See Bourini v. Bridgestone/Firestone N. Am. Tire, LLC*, 136 F. App'x 747, 751 (6th Cir. 2005) (affirming summary judgment in a case involving eight alleged incidents of national origin and religious harassment spread out over a period of five years); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 751-52 (4th Cir. 1996) (affirming summary judgment in case alleging intermittent harassment over a seven-year period with gaps between incidents as great as a year), abrogated on other grounds by *Bostock v. Clayton County*, ___ U.S. ___, 140 S. Ct. 1731 (2020); *Clay v. Lafarge N. Am.*, 985 F. Supp. 2d 1009, 1031-33 (S.D. Iowa 2013) (affirming summary judgment because sporadic comments, favorable treatment of a few senior coworkers, and the assignment of a few undesirable tasks over more than a decade did not establish a severe and pervasive hostile work environment); and *Brantley v. Kempthorne*, 2008 U.S. Dist. LEXIS 38406, *26-29, 2008 WL 2073913 (D. D.C. May 13, 2008) (affirming judgment as a matter of law on allegations of a handful of isolated incidents over a five-year span with no evidence of protected-class motivation). Even if these cases were applicable to a 12(b)(6) motion in the Eighth Circuit, they are readily distinguishable.

decisions. These decisions are of limited usefulness because they apply an . . . evidentiary standard, at the close of discovery, and not as a background against which to determine whether a pleading raises a plausible claim. 2017 U.S. Dist. LEXIS 165559, at *11-12 (D. Minn. Oct. 5, 2017) (*citing Blomker*, 831 F.3d at 1056). This court should apply the same reasoning and reject BNSF's attempts to dismiss the EEOC's well-pleaded complaint.

### C.  The EEOC pleads facts supporting BNSF's liability as an employer.

The EEOC alleges the hostile work envornment at BNSF in Alliance was created and maintained by both coworkers and supervisors. An employer is vicariously liable for the actions of its supervisors and managers,[6] *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 888 (8th Cir. 1998), and is liable for harassment by non-management coworkers where it knew or should have known of it but failed to take appropriate remedial action. *Nichols v. Tri-National Logistics, Inc.,* 809 F.3d 981, 985 (8th Cir. 2016). As alleged in the EEOC's complaint, BNSF knew about the harassing conduct at its Alliance railyard because the company's supervisors saw it, heard it, participated in it, and received complaints about it from affected employees.

First, the EEOC has described a workplace where BNSF had inescapable knowledge of the harassment because major components of the hostile environment were open and notorious. The Alliance facility and locomotives were permeated with

---

[6] BNSF inexplicably claims EEOC alleges BNSF's liability only for coworker harassment. Def. Mem. at 2, 16. But the complaint identifies BNSF supervisors and managers by name and/or job role and attributes actions they took that contributed to the hostile environment to them. Doc. 10, p. 6 ¶22d, ¶22e, 24, p. 9-10 ¶33. BNSF's memorandum does not move for dismissal of any claims arising from the actions of its supervisors and managers, and there is no grounds for it to do so.

offensive sexual graffiti. (Doc. 10, p. 7 ¶25). Nude photographs were circulated among coworkers and supervisors, including a nude image of a female Conductor. (Doc. 10, p. 6 ¶24, p. 7 ¶25(d), p. 10 ¶39). Trainmasters heard male employees calling women by sexualized, diminutive names like "baby" or "baby girl" and commenting on how women smelled or looked. (Doc. 10, p. 5 ¶22(c)).

Second, the EEOC has pleaded facts to show that supervisors and managers, all of whom had direct or successively higher authority over female employees, contributed to the hostile environment by participating in and/or condoning the sexualized, XX environment. A Road Foreman told a female subordinate they should roll around in a blanket together with other supervisors present. (Doc. 10, p. 6 ¶22(d)). He also passed a nude photo of a female Conductor around to other employees. (Doc. 10, p. 6 ¶24). The female Conductor whose picture was circulated to multiple employees quit the job. *Id.* BNSF trainers allowed sexually explicit discussions including sexual jokes and descriptions of male employees' sexual exploits during their sessions. (Doc. 10, p. 6 ¶22(e)). Even the Superintendent tolerated participants in a training he conducted making sexual comments about other coworkers. (Doc. 10, p. 9-10 ¶33).

Finally, BNSF had specific actual knowledge of the harassment and that female employees were offended because women reported them directly to BNSF supervisors, managers, or Human Resources, including, but not limited to:

- a report to a Trainmaster and Road Foreman – who laughed in response – that a male Engineer spread false rumors claiming a female Conductor was sexually involved with male coworkers on the job and that the road was not a woman's job (Doc. 10, p. 6 ¶22);

- a report to a Road Foreman regarding a male employee who told a female Conductor "women are bitches" and "stupid whores"; the foreman responded only that the male coworker had "had a rough life" (Doc. 10, p. 6 ¶23(a));

- a report to a Trainmaster that a male employee was using BNSF's computer systems to find a female coworker's work locations to stalk her and accost her in BNSF's parking lot before and after work for weeks (Doc. 10, p. 12 ¶47);

- a report to Trainmasters regarding sexually explicit drawings in locomotives with offensive gender-based comments ("#TITSFORTOOTS" and "#TOOTSFORTITS", with copies of the images given to the Trainmasters (Doc. 10, p. 7 ¶25 (c));

- a report to a Foreman that a male Engineer treated a female Conductor in a hostile and abusive manner that he would not have used if she were a man (Doc. 10, pp. 8-9 ¶29);

- a report on July 21, 2017, from a female Conductor to BNSF Assistant Vice President of Human Resources & Diversity requesting to file an EEO complaint (Doc. 10, p. 9 ¶31);

- a charge of discrimination filed with the EEOC on January 17, 2018, and served on BNSF setting forth allegations of sex discrimination and harassment of a female Conductor and other aggrieved female individuals in non-management positions (Doc. 10, p. 10 ¶33-34);

- reports regarding sexually offensive graffiti, including a request for action directed to Superintendent Stevens and a report to a Senior Trainmaster (Doc. 10, p. 7 ¶26; p. 11 ¶41);

- a report to a Senior Trainmaster that a male coworker sexually assaulted a housekeeper at a hotel where employees stayed between trips (Doc. 10, p. 7  ¶41); and

- a report to Human Resources regarding aggressive and frightening behavior of a male trainer toward a female trainee, including his demand for access to her hotel room during an overnight training trip (Doc. 10, p. 11 ¶44).

The complaint alleges that none of these reports resulted in action that stopped the ongoing harassment and it continues to the present. *See, e.g.,* Doc. 10, p. 5 ¶22(c), p. 6 ¶22(e), p. 9-10 ¶33, p. 12 ¶47, p. 12 ¶48. Moreover, BNSF officials at the Alliance railyard failed to reasonably address and prevent harassment that occurred there and was reported to them. (Doc. 10, p. 9 ¶¶31, 33, p. 10 ¶¶ 35-39, p. 11 ¶¶41, 42, 44, p. 12 ¶¶45, 47).

### D. There are no "time-barred portions of the EEOC's claims."

If the Court does not dismiss the EEOC's complaint, BNSF asks the Court, in the alternative, to dismiss the "time-barred portions of the EEOC's claims," referring to harassing incidents that occurred before March 23, 2017, the date 300 days before Merker filed her EEOC charge. BNSF's request should be denied. First, the pleadings stage is not the appropriate time to address the issue of timeliness. "A motion to dismiss typically is not the correct vehicle for determining whether a claim is barred based on when it arises. *EEOC v. New Mexico*, No. 15-879 KG/KK, 2017 U.S. Dist. LEXIS 198770

(D.N.M. Dec. 4, 2017) (citing *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (stating a claim can only be dismissed as untimely when it is "obvious[ly] [barred] from the face of the complaint and no further factual record is required to be developed")).

Second, the EEOC alleges a single count of hostile work environment based on sex, not separate "claims" of harassment for each alleged incident. The hostile work environment created by BNSF at its Alliance facility has been ongoing, since at least 2011, continuing through 2017 and on until the present. "A charge alleging a hostile work environment claim … will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 (2002). Where the acts are "so similar in nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice" they are considered as part of a continuing violation. *Rowe v. Hussman Corp.*, 381 F.3d 775, 781 (8th Cir. 2004) (citing *Morgan,* 536 U.S. at 107)*; see also EEOC v. Phase 2 Invs. Inc.*, 310 F. Supp. 3d 550, 574 (D. Md. 2018) (where harassing conduct was alleged to have occurred both before and after the date 300 days prior to the charge of discrimination, and defendant moved to dismiss the EEOC's complaint on the grounds that the pre-300 days harassment was untimely, court found all the alleged incidents could be considered part of a single unlawful practice).

In this case, the harassing conduct before and after March 2017 was "so similar in nature, frequency, and severity" as to be "part and parcel" of the unlawful hostile work environment, that it must be considered a continuing violation.  Comments about

women's bodies and sexual propositions, *see* Doc. 10 p. 4 ¶¶21(a)-(b)) and p. 5 ¶¶22(d)-(e), derogatory comments about women, *see* p. 4 ¶¶21(c)-(d) and p. 5 ¶¶22 (a)-(b)), showing photos of naked women, *see* p. 6 ¶24 and p. 10 ¶39, male employees stalking female employees, *see* p. 11 ¶¶44 and p. 12 ¶47, sexually explicit graffiti, *see* p. 7 ¶¶25(a)-(f) and p. 10 ¶38, all occurred both before and after March 2017. Both before and after March 23, 2017, the same managers, including but not limited to Jeff Stevens, Alex Adams, Trainmaster Lyle Horton, Terminal Manager William Boness, and HR representative Brook Owens, received reports about the harassment. (Doc. 10, p. 5 ¶¶22(d), p. 5 ¶¶23(a)-(d), p. 6 ¶24 p.7 ¶26, p.8 ¶29, p.11 ¶41, 42, 44, p. 12 ¶47.)

## II. BNSF's Motion to Dismiss should be denied because the EEOC may seek relief for aggrieved individuals without identifying them by name in its complaint.

BNSF asks the Court to dismiss EEOC's claim for relief for any women besides Merker because they are not identified by name in the complaint. BNSF relies on the 2012 Eighth Circuit decision in *CRST I*, but fails to mention the Supreme Court's 2015 decision in *Mach Mining*, which calls into question whether *CRST I* remains good law. Under the precedent of *Mach Mining* and its progeny, the EEOC may seek relief for a class of aggrieved employees without identifying each individual by name. But even *CRST I* would not require dismissal of the EEOC's claim for relief for unnamed class members, as BNSF admits that "*CRST I* does not expressly require that other aggrieved individuals be named in the complaint." Def. Mem. at p. 3. Moreover, the EEOC's claims in this suit are distinguishable from the scenario in *CRST I*.

A.   **Under the Supreme Court's decision in *Mach Mining*, the EEOC is not required to identify every aggrieved individual to bring suit seeking relief for a class of employees.**

In *Mach Mining*, the Court held that the EEOC must give an employer notice describing "both what the employer has done and which employees (*or what class of employees*) have suffered as a result" prior to seeking relief for the alleged discrimination victims.[7] 575 U.S. at 1656 (emphasis added). The Fifth and Ninth Circuits, as well as multiple district courts, have followed *Mach Mining* and held that the EEOC may seek relief for a class of aggrieved workers even where the agency's investigation and conciliation did not identify class members by name. In *Arizona ex rel. Horne v. Geo Group, Inc.*, the Ninth Circuit considered a district court decision – which relied on *CRST I* – granting summary judgment against the EEOC and Arizona's Civil Rights Division because the agencies did not identify class members by name during their pre-suit investigation and conciliation processes. 816 F.3d 1189, 1200 (9th Cir. 2016). The appeals court vacated that decision, noting that the EEOC should not be "barred from seeking relief on behalf of any unnamed class members they had yet to identify when they file their suit." *Id.*

> Civil litigants in private class actions may discover additional aggrieved employees who may wish to participate in the class. In light of the broad enforcement authority of the EEOC and the Division, it would be illogical to limit their ability to seek classwide relief to something narrower than the abilities of private litigants.

*Id.*

In *EEOC v. Bass Pro Outdoor World, LLC, et al*, the Fifth Circuit followed the

---

[7] *Mach Mining*, as *CRST I*, considered the EEOC's obligations concerning pre-litigation investigation and conciliation, rather than its pleading requirements in federal court, but the EEOC agrees with BNSF that the principles here are the same. (*See* Def. Mem. at p. 17).

Ninth Circuit's lead and held that the EEOC was not required to name individual class members during its pre-suit investigation and conciliation of a claim under §706 of Title VII. 826 F.3d 791, 805-06 (5th Cir. 2016). Instead, it was sufficient that the EEOC simply described the class Bass Pro allegedly discriminated against – "African American, Hispanic, and Asian applicants." 826 F.3d at 805.  And in *EEOC v. Celadon Trucking Services, Inc.*, where the EEOC did identify some class members by name during the pre-suit conciliation, the court permitted the agency to drop some class members and seek relief for previously-unnamed individuals it its lawsuit. No. 1:12-CV-00275-SEB-TAB, 2015 WL 3961180, \*31 (S.D. Ind. June 30, 2015); *see also EEOC v. UPS,* No. 15-CV-4141 (MKB) (CLP), 2017 U.S. Dist. LEXIS 101564 (E.D.N.Y. June 29, 2017) (citing *Geo*, *Bass Pro*, and other cases and concluding that "cases decided after *Mach Mining* suggest that the EEOC is not precluded from identifying new claimants within the scope of the claims that were investigated, disclosed and conciliated"); *EEOC v. Plains Pipeline, L.P.*, No. MO:20-CV-00082-DC, 2021 U.S. Dist. LEXIS 126628, at \*10 (W.D. Tex. Feb. 17, 2021) (denying motion to dismiss class claims because EEOC did not need to identify all aggrieved individuals, what specific acts of discrimination any of the unidentified individuals suffered, which of Defendants' actors were involved in the asserted misconduct, or when the conduct occurred).

The fact that EEOC brings this suit under §706 also does not create any obligation for the EEOC to identify aggrieved individuals in its complaint. In *General Telephone Co. of the Northwest v. EEOC*, 446 U.S. 318 (1980), the Supreme Court held that the EEOC was not required to seek class certification under Rule 23 before pursuing its §706 claim of sex discrimination on behalf of "female employees in General Telephone's facilities" in California, Idaho, Montana, and Oregon. 446 U.S. at 321.

Significantly, the EEOC had filed suit after investigating just four individual charges and concluding that discrimination was widespread. *See id.* at 320, 324. Nothing in the Supreme Court's opinion indicates the EEOC had identified all potential claimants before filing suit, and nothing in the opinion suggests that was necessary. Rather, the Supreme Court said, "the EEOC need look no further than §706 for its authority to bring suit in its own name for the purpose . . . of securing relief for a group of aggrieved individuals." *Id.* at 324.

Moreover, the detailed factual allegations in the EEOC's complaint weigh against any need for the agency to identify class members by name at this early stage in the litigation. As the district court noted in *EEOC v. Original Honeybaked Ham Co. of Ga.*, 918 F. Supp. 2d 1171, 1180 (D. Colo. 2013), "[t]he greater the specificity in describing the alleged unlawful conduct, the less important it becomes to specifically identify aggrieved persons. If the employer understands the nature, extent, location, time period, and persons involved in the alleged unlawful conduct, it may be able to reasonably estimate the number and identities of persons who may be impacted." In this case, the EEOC's complaint provides BNSF with many examples of the types of harassment some male employees engaged in, where they did it, who was present and/or was told about it, and, often, when it happened. With this information, BNSF should be able to "reasonably estimate the number and identities" of the women who were harmed.

**B.    Even under *CRST I*, the EEOC's complaint against BNSF should not be dismissed.**

First, *CRST I* was decided on summary judgment, not a motion to dismiss. BNSF acknowledges this important distinction. Def. Mem. at p. 15 ("the dismissal decision in that case [*CRST I*] occurred after discovery and summary judgment proceedings instead

of in the Rule 12(b)(6) context . . ."). As discussed *supra,* pp. 3-5, neither the Federal Rules of Civil Procedure nor the courts require a plaintiff to plead all the facts in its complaint that it would be required to establish at summary judgment.

Second, the factual scenario in *CRST I* was vastly different from the situation here. In this case, the EEOC seeks relief for a very limited class of individuals – women who worked at BNSF's railyard in Alliance, Nebraska who were subjected to a sexually hostile work environment during the relevant time period. These women all worked at one location, under the management of a single superintendent. Many employees – both harassers and victims – know each other and work together. BNSF has supervisory and management staff onsite who personally know the employees. With reasonable diligence, BNSF could determine which women at this single facility had been subjected to an unwanted sexually hostile work environment.

In *CRST I*, class members were over-the-road truck drivers who could be on the road for as long as 28 days. 679 F.3d at 665. They did not work at a single location, and victims were often isolated with their harassers. Two years after the suit was filed, the district court said it was still unclear how many "allegedly aggrieved persons" on whose behalf the EEOC was seeking relief. *CRST I*, 679 F.3d at 669. *CRST I* – and its substantially different factual scenario – cannot support dismissal in this case.

### III.    If the Court concludes that the EEOC's complaint is deficient, the appropriate remedy is to grant the EEOC leave to amend pursuant to Rule 15(a)(2).

If the Court is not persuaded that the EEOC's complaint meets the requirements of Fed. Rule Civ. Proc. Rule 8 and determines the EEOC has failed to state a claim upon which relief can be granted under Fed. Rule Civ. Proc. 12(b)(6), the Court should nonetheless deny the motion to dismiss and instead permit the EEOC to amend its

complaint. "A district court should 'freely give leave' to amend a complaint 'when justice so requires.'" Fed. R. Civ. P. 15 (a)(2). The Eighth Circuit takes a "liberal viewpoint towards leave to amend" and leave "should normally be granted absent good reason for a denial." *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928 (8th Cir. 2000). "Under this policy, only limited circumstances justify a district court's refusal to grant leave to amend pleadings: undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987).

An amendment would not prejudice BNSF. This lawsuit is in its early stages. Defendant has not filed an Answer, there is no scheduling order, initial disclosures have not been exchanged, and discovery has not begun. Even if BNSF could show it would be prejudiced by an amendment, any prejudice to BNSF "must be weighed against the prejudice to the [EEOC] by not allowing the amendment." *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). Denial of leave to amend would substantially and unfairly prejudice the EEOC, the women working for BNSF in a sexually hostile work environment, and the public interest in robust enforcement of Title VII.

## CONCLUSION

The Court should reject BNSF's invitation to ignore controlling case law from the Supreme Court and make a merits determination under the guise of a pleading assessment. BNSF seeks to stop the EEOC from even obtaining discovery relating to the responsibility it bears as an employer for requiring the women who work in its Alliance, Nebraska railyard to tolerate a daily barrage of sexual images and comments, gender slurs, threatening conduct, and blatant hostility toward their very presence in the workplace. The EEOC has demonstrated that BNSF's motion is not supported by the law

it cites. The Court should deny the motion to dismiss and allow this case to be decided

on its merits.

Respectfully,

s/Lisa C. Stratton
Lisa C. Stratton, MN Bar No. 236858
Equal Employment Opportunity Commission
Kansas City Area Office
400 State Ave., Suite 905
Kansas City, KS 66101
Lisa.stratton@eeoc.gov
Phone: (913) 359-1809
Fax:   (314) 539-7895

Lauren W. Johnston, OK Bar No. 22341
Equal Employment Opportunity Commission
Oklahoma City Area Office
215 Dean A. McGee Ave., Suite 524
Oklahoma City, OK 73102
Phone: (405) 666-0379
Fax: (314) 539-7895
Lauren.johnston@eeoc.gov
**Attorneys for Plaintiff EEOC**

## Certificate of Service

I certify that on December 20, 2021, this document was filed with the Clerk of
Court and, by operation of the ECF system, a copy served on:

Bryan P. Neal          bryan.neal@tklaw.com, cynthia.sanders@tklaw.com,
jerry.graham@tklaw.com, sherri.rodgers@tklaw.com
Nichole S. Bogen     nbogen@ldmlaw.com, ldmnotices@ldmlaw.com,
sseeba@ldmlaw.com, tspahn@ldmlaw.com
Tyler K. Spahn          tspahn@ldmlaw.com, ldmnotices@ldmlaw.com,
sseeba@ldmlaw.com