IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | Case No. 8:21-CV-369 |
| Plaintiff, | ) ) | BNSF'S REPLY BRIEF IN SUPPORT OF |
| vs. | ) ) | MOTION TO DISMISS THE AMENDED COMPLAINT |
| BNSF RAILWAY COMPANY, | ) ) | |
| Defendant. | ) | |

Defendant BNSF Railway Company ("BNSF") submits this Reply Brief in Support of its Motion to Dismiss Plaintiff's Amended Complaint (Doc. 11.)

## INTRODUCTION

The EEOC's effort to avoid the Eighth Circuit's decisions in the *CRST* cases[1] is deeply flawed. The agency first seeks to avoid the holding in *CRST I* that it may sue only for individuals identified during the pre-lawsuit investigation phase by suggesting that the decision is no longer good law. It even chastises BNSF for not citing *Mach Mining, LLC v. EEOC*, 575 U.S. 480 (2015), which the EEOC incorrectly claims undermines *CRST I*. But the EEOC is the party failing to inform the Court of relevant precedent—the post-*Mach Mining* developments in the *CRST* litigation itself that show *CRST I* remains the law in this circuit. Then, building on that erroneous approach, the EEOC simply asks the Court to ignore the law in the Eighth Circuit and follow contrary decisions from other courts. Indeed, if the EEOC had its way, the Court would disregard the controlling Eighth Circuit and Supreme Court decisions and allow the agency to pursue exactly the course of action the Eighth Circuit has already rejected. The law in the Eighth Circuit simply

---

[1] *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 672 (8th Cir. 2012) ("*CRST I*"); *EEOC v. CRST Van Expedited, Inc.*, 774 F.3d 1169 (8th Cir. 2014) ("*CRST II*"), *rev'd*, 578 U.S. 419 (2016) ("*CRST III*"); *EEOC v. CRST Van Expedited, Inc.*, 944 F.3d 750 (8th Cir. 2019) ("*CRST IV*").

does not permit the agency to sue on behalf of women who it did not learn of during the investigation process, for whom it did not seek to conciliate, and who it would discover only during this litigation.

The EEOC also asks the Court to overlook the requirement that in section 706 actions like this one the agency must eventually prove that *each* allegedly aggrieved individual's experience meets the elements of a hostile work environment claim. The pleading corollary to that rule is that the agency must allege sufficient facts that if true would support a claim as to each individual for whom it sues. The EEOC tries to avoid its burden by reciting a list of alleged events without facts connecting the conduct to any particular "similarly aggrieved woman," pleading in the aggregate, and using empty yet misleading phrases like "class sexual harassment." (*See* Doc. 17, pp. 3, 11, 18.) But this is not a class action: it is a section 706 lawsuit seeking relief for specific individuals, more akin to a multi-plaintiff lawsuit but one prosecuted by a single named plaintiff. The EEOC thus must plead sufficient facts that would support an actionable claim as to each individual. That is by no means an impossible, or even a particularly difficult, task provided the agency has done its pre-litigation homework as the law requires. That is particularly true given the EEOC's broad power to obtain information during the investigation. Yet despite its pre-litigation investigation, the agency wholly fails to meet its pleading obligations as to the alleged "similarly aggrieved women."

Even as to Merker, the EEOC's allegations come up short of pleading an actionable hostile work environment claim under the standard the law set for such claims. None of the events the EEOC alleges as to Merker are sufficiently severe to individually meet the hostile work environment threshold. And especially given that the agency is suing for conduct allegedly occurring over the course of a decade, the pleaded events taken together also do not meet either

the severity or pervasiveness standards. Again, this is not a difficult standard—if the agency has the facts that would actually satisfy the legal standard for hostile work environment claims.

Because the EEOC has not alleged sufficient facts that, if true, would support a hostile work environment claim on behalf of either Merker or any of the alleged "similarly aggrieved women," the Court should dismiss the Amended Complaint.

## REPLY TO EEOC'S RESPONSE

**I.    The EEOC Attempts to Cloud Its Pleading Burden.**

To fulfill its pleading requirement, the EEOC must allege facts that, if true, would satisfy every element of the hostile work environment claim the agency intends to prove at trial. *See, e.g.*, *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473-74 (8th Cir. 2009) (en banc) (affirming dismissal where facts pleaded did not support certain elements of the claim); *see also Cook v. George's, Inc.*, 952 F.3d 935, 939-40 (8th Cir. 2020). The Amended Complaint fails to allege sufficient facts to support the reasonable inference that Merker and the alleged "similarly aggrieved women" have experienced severe or pervasive harassment for more than a decade. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Stamm v. Cnty. of Cheyenne*, 326 F. Supp. 3d 832, 847 (D. Neb. 2018) (internal quotations omitted).

The EEOC attempts to obscure its pleading requirement by arguing that it is not required to plead a prima facie case. (*See* Doc. 17, pp. 5-6.) The U.S. Supreme Court rejected in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), any requirement for a plaintiff bringing a discrimination claim to plead facts establishing a prima facie case in reference to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A prima facie case under the *McDonnell Douglas* framework is an evidentiary standard. It "defines the quantum

of *proof* plaintiff must present to create a rebuttable presumption of discrimination that shifts the burden to defendant to articulate some legitimate, nondiscriminatory reason for its conduct." *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 926-27 (8th Cir. 1993) (rejecting prima facie case as pleading standard, in part, because the *McDonnell Douglas* framework does not apply to all discrimination cases).

Here, there is no adverse employment action for which the EEOC would attempt to establish a presumption of discrimination, so the prima facie concept does not apply.[2] BNSF's arguments are not directed at the EEOC's evidentiary burden, but at whether the agency has alleged sufficient facts to raise a reasonable inference that the agency can satisfy the *elements* of a hostile work environment claim for Merker and the "similarly aggrieved women" for whom it sues. As to the elements, the EEOC is subject to the same pleading requirements as any other plaintiff. *See General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 334 n.16 (1980) ("We by no means suggest that the Federal Rules generally are inapplicable to the EEOC's § 706 actions."); *see also Ring*, 984 F.2d at 927 (considering statutory elements of Fair Housing Act claim in analyzing motion to dismiss).

The EEOC also is incorrect that summary judgment decisions are irrelevant to the Court's analysis under Rule 12(b)(6). (Doc. 17, pp. 12-14.) That is a common but mistaken tactic used in opposing motions to dismiss. The Eighth Circuit itself looked to multiple summary judgment decisions in *Blomker* for reference to the high standard required for severe or pervasive harassment. *See Blomker,* 831 F.3d at 1058-59. Although summary judgment decisions turn on

---

[2] Although the Eighth Circuit mentioned in dicta using the prima facie case/*McDonnell Douglas* framework for a hostile work environment claim, *see Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004), the cases the court cited for that proposition and the remainder of the opinion demonstrate that the use of prima facie case was a misnomer. In any event, here BNSF attacks the inadequate pleading of the *elements* of the claim.

the adequacy of the proof presented, they still inform the necessary elements of the claim and whether the pleaded facts are sufficient to raise a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1057 (finding that the plaintiff "failed to set forth sufficient *factual* allegations that entitle her to relief") (emphasis added) (internal quotations omitted); *Gregory*, 831 F.3d at 473 ("[T]he complaint must include sufficient factual allegations to provide the grounds on which the claim rests.").

The Eighth Circuit's holdings in *CRST I* make the EEOC's pleading burden clear. The agency must prove that each allegedly aggrieved individual's experience satisfies the high burden of a hostile work environment to be successful at trial. *See CRST I*, 679 F.3d at 685-87 (requiring the EEOC to demonstrate a genuine issue that each female employee experienced harassment affecting a term, condition, or privilege of her employment). Thus, the EEOC must plead sufficient facts to raise a reasonable inference that each allegedly aggrieved individual suffered from an actionable hostile environment. "At the pleading phase, the court must determine whether the alleged harassment is severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered." *Warmington*, 998 F.3d at 799 (internal quotations omitted).

II.     **The EEOC Fails to Demonstrate that It Has Sufficiently Pleaded a Hostile Work Environment Claim.**

The EEOC has not pleaded sufficient facts of severe or pervasive harassment for Merker or any "similarly aggrieved women." Relying on conclusory arguments and buzzwords, the EEOC tries to distinguish the Amended Complaint from *Blomker* and *Warmington* and the other cases BNSF cited. (*See* Doc. 17, pp. 7-8, 10 ("pervasive harassment" and "widespread hostility towards women's very presence"); p. 12 (listing conclusory "descriptors" of "near daily," "almost daily," and "perpetually present" alleged harassment)). The EEOC cannot rely on conclusory arguments.

A complaint that "merely applies labels" to alleged conduct will not survive a motion to dismiss. *See Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 409 (8th Cir. 2012).

The EEOC's mistakes flow in part from its faulty premise that it can rely on arguments of a generalized hostile work environment without pleading a connection to Merker or any identifiable "similarly aggrieved women." (*See, e.g.*, Doc. 10, ¶¶ 22(a) through (e), 24, 25(b) & (e) through (f), 26, 27(b) & (c), 28, 39.) The EEOC is not entitled to an inference that Merker or any "similarly aggrieved women" were exposed to or even aware of alleged incidents occurring between individual employees or in discrete locations over a decade. For example, it is illogical to assume that a female yardmaster hired in 2016 would have any knowledge of, or have been affected by, a male coworker's alleged inappropriate comments to Merker in 2012 regarding her wearing a coat. (*See* Doc. 10, ¶ 21(b).) There is no basis to infer that other employees were aware of a dead bird found on the toilet seat in a locomotive restroom. (*See id.* at ¶ 27(c).) The EEOC does not allege that this occurred to a "similarly aggrieved woman" or that this female employee experienced any of the other conduct alleged in the Amended Complaint. (*See id.*)

The EEOC misstates the law in arguing that it can use conduct in the aggregate to establish that an individual claimant experienced a hostile work environment. (*See* Doc. 17, p.11.) An individual claimant could not *subjectively* perceive her work environment as hostile if she was unaware of the alleged conduct. *See Cottrill v. MFA, Inc.*, 443 F.3d 629, 636 (8th Cir. 2006) (plaintiff could not rely on spying through hole in restroom wall because she was unaware of it). *Williams v. ConAgra Poultry Co.*, 378 F.3d 790 (8th Cir. 2004), does not stand for the proposition that a plaintiff can use conduct unknown to him or her to establish severe or pervasive harassment.[3]

---

[3] The EEOC also cites *Hall v. Gus Constr. Co.*, 842 F.2d 1010 (8th Cir. 1988), but fails to clarify the Eighth Circuit's reasoning in that case. (*See* Doc. 17, pp. 11-12.) The district court there did not err in considering the plaintiffs' hostile work environment claims together, because "the

The Eighth Circuit held there that the plaintiff could not rely on such conduct. "Because a subjectively hostile environment is one that by definition the plaintiff is aware of, a plaintiff cannot recover for harassment of which he or she is unaware." *Id.* at 794. The Eighth Circuit limited its review of the plaintiff's hostile work environment claim to the plaintiff's own experiences: "in considering Mr. Williams's claim we confine ourselves to the harassment that he testified to personally suffering from." *Id.* at 795.

The EEOC fails to allege sufficient facts to demonstrate that Merker experienced harassment with a frequency or severity to support a decade-long abusive working environment. None of the EEOC's allegations regarding Merker involve threatening behavior or physical contact. There are allegations of two incidents involving potentially threatening conduct, however the EEOC does not allege a connection to Merker.[4] (*See* Doc. 10, ¶¶ 44-47.) The EEOC does not allege that the female employees involved were "similarly aggrieved women" identified by the agency during its pre-lawsuit investigation. (*See id.*) Nor does the agency allege that these women experienced any other alleged conduct, such that the Court could assess whether the totality of conduct experienced by a particular woman rises to the level of severe or pervasive harassment. That failing plus the EEOC's failure to plead a connection to Merker or any identifiable "similarly aggrieved women" prevents the agency from relying on those alleged incidents to bolster its claim.

---

harassment directed toward *each woman* was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *See Hall*, 842 F.2d at 1014-15 (emphasis added).

[4] The EEOC also alleges that Merker heard of a sexual assault involving a BNSF employee and a non-BNSF employee at a hotel. (Doc. 10, ¶ 41.) BNSF in no way diminishes the severity of a sexual assault; however, the EEOC does not explain how Merker learning of such conduct could even possibly subject BNSF to liability for creating a hostile work environment towards Merker. The EEOC does not allege that BNSF failed to respond or otherwise condoned the alleged conduct. BNSF believes the EEOC could not make such allegations, because BNSF is not aware of any evidence of an alleged sexual assault.

The EEOC simply does not allege a plausible claim of hostile work environment harassment under the high standard set by the governing law. BNSF does not argue, as the EEOC characterizes, that physical touching or threats are *necessary*. (*See* Doc. 17, pp. 10-11.) Severe and pervasive harassment can be established through multiple types of conduct. *See, e.g.*, [Breeding v. Arthur J. Gallagher & Co.](), 164 F.3d 1151, 1159 (8th Cir. 1999) (reversing summary judgment for employer when the plaintiff's supervisor fondled his genitals and continuously used lewd and sexually inappropriate language). But isolated incidents, unless serious, are insufficient to establish severe or pervasive harassment. The EEOC does not discern this applicable legal principle from the cases cited by BNSF. (*See* Doc. 17, p. 13 n.5.) "More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment." *[Blomker]()*, 831 F.3d at 1057 (internal quotations omitted).

Those cases, among others, explain why the EEOC's allegations regarding Merker are too few to raise a plausible inference that she experienced "sufficiently continuous and concerted" harassment over a decade. *See also [Alfano v. Costello]()*, 294 F.3d 365, 374 (2d Cir. 2002) ("As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.") (Internal quotations omitted). The agency alleges isolated comments made to Merker *over a decade*, a timeframe the agency chose to plead and yet provided dates for only a handful of allegations. (*See* Doc. 10, ¶¶ 21(a) and (b), 29, 40.) For working conditions, the agency's allegations of Merker encountering inappropriate graffiti and images in some work locations, without context as to how many locomotives she has operated over the last decade, fail to push the EEOC's allegations over the line of plausibility for an abusive working environment.

For the alleged "similarly aggrieved women," the EEOC makes no attempt to argue that it has adequately pleaded severe or pervasive harassment. The agency does not respond to BNSF's argument that wholly apart from whether it must individually identify the other women, it nevertheless must plead facts that would be sufficient to establish a claim on behalf of each woman. The EEOC claims that its "detailed factual allegations . . . weigh against any need for the agency to identify class members by name" and that BNSF should be able to "estimate" the number and identities of the women. (*See* Doc. 17, p. 22.) That is a different issue and is addressed below. Even if unidentified by name, the agency must still plead its claims in a way that the Court (and BNSF) can determine whether it has adequately asserted a claim by each woman on whose behalf it sues. That is the EEOC's burden. The agency's failure to connect alleged incidents to a particular woman means that the Court (and BNSF) cannot assess whether there is a plausible claim as to that woman. Having made no effort to plead individually as to each of the alleged "similarly aggrieved women," the agency cannot have satisfied its pleading burden in this section 706 lawsuit, regardless of whether or not it named each of the other women.

## III.  The EEOC Relies on a Mistaken Approach to Address Employer Liability.

The EEOC must plead and prove a basis for employer liability for alleged conduct by coworkers. See *CRST I*, 679 F.3d at 685 (employer liability is an element of a hostile environment claim); *see also Cook*, 952 F.3d at 939-40 (evaluating motion to dismiss against the elements of the claim); *Gregory*, 565 F.3d at 473-74 (same). "[A] [p]laintiff must also plead enough facts that the hostile work environment can be imputed to the employer in order to establish employer liability for hostile actions taken by its employees." *Smith v. HBO*, 2013 U.S. Dist. LEXIS 73333, *7 (E.D.N.Y. May 22, 2013). In response to the employer-liability element, the EEOC relies on arguments of the alleged "open and notorious" hostile work environment. (*See* Doc. 17, p. 14.)

9

The agency, again, seeks to make a claim against BNSF in the aggregate rather than focusing on each allegedly aggrieved individual's claim and whether BNSF had actual or constructive notice of the particular alleged harassment experienced by a particular woman and failed to take appropriate action.

BNSF does not "inexplicably" argue that the EEOC's allegations are directed only towards coworker harassment. (*See* Doc. 17, p. 14 n.6.) BNSF recognized from the EEOC's pleading that its allegations *regarding Merker* appear to be based exclusively on coworker harassment. (*See* Doc. 10, ¶¶ 21(a) through (d), 23(b), 27(a), 29, 36, 40.) Although the EEOC alleges some reports by Merker to supervisors, these alleged reports are not allegations that the supervisors *engaged in* harassment as required for a supervisor-harassment claim. Nor do they support a reasonable inference that BNSF was on notice that Merker experienced severe or pervasive harassment.

And for the alleged "similarly aggrieved women," the agency's allegations of reports of coworker harassment and working conditions are either conclusory and concern only Merker (*e.g.*, Doc. 10, ¶ 23 (asserting that "[f]emale employees . . . opposed this harassment by reporting it to supervisors" but then describing reports only by Merker); *id.* at ¶ 29), or the allegations concern isolated reports about particular conduct that would not in itself rise to the level of a hostile work environment and with no way to assess whether that particular employee experienced additional improper conduct after complaining (*e.g.*, *id.* at ¶ 26 (describing reports by "a female engineer" and "a female conductor" concerning alleged graffiti)). While the agency pleads conduct by supervisors involving *employees other than Merker*, its pleading framework in failing to identify any "similarly aggrieved women" makes it impossible to assess whether any particular woman's experience could rise to the level of severe or pervasive harassment or whether the woman experienced only the single instance of alleged inappropriate conduct.

**IV.    The EEOC's Claims on Behalf of Alleged "Similarly Aggrieved Women" Should Be Dismissed Because of the Agency's Failure to Identify the Women, or the Court Should Order the EEOC to Identify the Women.**

BNSF argued that the Court should dismiss any claims concerning women other than Merker because the agency has not identified them in the Amended Complaint. BNSF relied on the Eighth Circuit's decision in *CRST I*. *CRST I*, 679 F.3d at 672-77. BNSF explained that, although the decision arose in the summary judgment context, the Eighth Circuit established a legal rule that governs this case: the EEOC may pursue section 706 claims *only* on behalf of individuals it actually learned of while investigating before issuing a determination and engaging in conciliation; the agency cannot wait until the litigation discovery process to go looking for aggrieved individuals. *Id.*. In light of that legal rule, and considering basic notice and fairness principles, the Court should require the EEOC to identify the individuals on whose behalf it sues in its Amended Complaint.

The EEOC is just flat wrong in arguing that the Eighth Circuit's decision in *CRST I* is no longer good law in light of the subsequent *Mach Mining*, 575 U.S. 480 (2015), decision. The EEOC compounds its error by criticizing BNSF for failing to cite *Mach Mining*. As explained below, *Mach Mining* concerns a different issue than the one addressed in *CRST I* that BNSF relies on, so there was no reason to cite it. And it is the EEOC that fails to inform the Court of relevant precedent: later developments in the *CRST* litigation confirm that *Mach Mining* does not remotely call into question the *CRST I* holding BNSF relies on.

The first problem with the EEOC's argument that *Mach Mining* overrules or undermines the *CRST I* holding is that the two cases concerned different issues. *Mach Mining* was about the EEOC's obligations during the conciliation process and to what degree a court can examine that process. *Mach Mining* does not address at all the issue *CRST I* addressed—what happens when

11

the EEOC fails to learn of and investigate the claims of any individual during the pre-lawsuit investigation phase? Thus, when the EEOC says that *Mach Mining* required the agency to give an employer notice of "both what the employer has done and which employees (or what class of employees) have suffered as a result" before suing, (Doc. 17, p. 20, quoting *Mach Mining*), the agency addresses the wrong issue, *i.e.*, what it must tell the employer during the conciliation process. BNSF is not arguing that the EEOC had to disclose the names of the other women to BNSF during the conciliation process. *BNSF is arguing that the EEOC can now sue only on behalf of women it actually learned of during the investigation process and whose claims it actually investigated and conciliated before litigation.* The EEOC, on the other hand, apparently wants the ability to sue on behalf of women who it did not learn of during the investigation process, for whom it did not seek to conciliate, and who it would discover only during this litigation. That's the exact course of action by this same agency that the Eighth Circuit squarely rejected in *CRST I*.

As to the viability of *CRST I*, it is the EEOC that fails to inform the Court of the subsequent relevant precedent in the *CRST* litigation itself. To explain, the Eighth Circuit's holding that the agency cannot sue on behalf of individuals as to whom the agency did not satisfy its presuit obligations concerned the EEOC's section 706 claims on behalf of 67 women that the district court dismissed because the EEOC failed to "investigate, issue a reasonable cause determination, or conciliate" those claims. *CRST I*, 679 F.3d at 672-77. After that decision, the district court on remand awarded attorneys' fees to CRST, in part based on the dismissal of those same claims, and the EEOC appealed again. The Eighth Circuit then held that the dismissal of the 67 claims did not support the award of attorneys' fees, but only because it did not qualify as a dismissal on the merits as was required at the time within this circuit. *CRST II*, 774 F.3d at 1181.

The Supreme Court then granted CRST's petition for a writ of certiorari and reversed, holding that there was no requirement that the dismissal be on the "merits" and that the only requirement is

that the EEOC's claims met the threshold for an award of attorneys' fees—that they were "frivolous, unreasonable, or groundless." *CRST III*, 578 U.S. 419, 432-35 (2016). Again, the decision is clear that the Supreme Court was addressing the precise dismissal that BNSF relies on here, the dismissal of the claims on behalf of the 67 women. *Id.* at 427-431.

Importantly, the Supreme Court had decided *Mach Mining* just a year before addressing the availability of—and allowing—attorneys' fees against the EEOC in *CRST III*. Yet, nowhere does the Supreme Court suggest in *CRST III* that the dismissal of the claims concerning the 67 women—the premise of the award of attorneys' fees—was incorrect or in any way in question. For the EEOC's theory to be correct, this Court would have to accept that the Supreme Court in *CRST III* held that the very dismissal BNSF relies on could support an award of attorneys' fees but simply overlooked or forgot to mention that the dismissal actually should not have occurred at all because it was contrary to the *Mach Mining* decision the Supreme Court had issued only a year earlier. That theory strains credulity—or worse given that the EEOC was the litigant in both cases.

In fact, before *CRST* reached the Supreme Court, Judge Reade had rejected the very argument the EEOC makes here. After *Mach Mining* the EEOC moved in *CRST* for relief under Rule 60, arguing that *Mach Mining* constituted a change in the law that demonstrated the district court's dismissal of the 67 claims was incorrect. *CRST*, 2015 U.S. Dist. LEXIS 166797, *3-*4 (N.D. Iowa Dec. 14, 2015). Judge Reade rejected the argument, holding that *Mach Mining* did not affect the dismissal because in *CRST* the court was not inquiring into the sufficiency of the EEOC's conciliation process, the issue in *Mach Mining*, "but rather found that no investigation or conciliation with respect to the 67 individual claims occurred at all." *Id.* at *7. "Therefore, *Mach Mining* is inapplicable." *Id.*

Making matters even clearer, after the Supreme Court's decision in *CRST III*, the case returned to Judge Reade, who found that the standard for attorneys' fees was satisfied as to the

13

dismissal of the 67 claims (among others), and the EEOC again appealed to the Eighth Circuit. The Eighth Circuit affirmed the district court's conclusion and award of substantial attorneys' fees against the EEOC as to the dismissal of the 67 claims (among others). *CRST IV*, 944 F.3d at 756-57. The Eighth Circuit specifically upheld the district court's conclusion that the EEOC's claims were "frivolous, unreasonable, or without foundation" because the agency had "wholly failed to satisfy its statutory presuit obligations." *Id.* (emphasis and quotation omitted). Thus, the Eighth Circuit affirmed the order for the EEOC to pay CRST seven figures in attorney's fees. *Id.* at 754.

In light of that history, there is no credible argument that *Mach Mining* overrules or undermines the *CRST I* legal principle that BNSF relies on. Not only has another court rejected this very argument; the Eighth Circuit, after *Mach Mining*, upheld a substantial award of attorneys' fees against the EEOC based on the determination that the EEOC's assertion of the claims was not only legally incorrect but frivolous. If the EEOC were correct, none of that would have occurred.

As to the additional cases the EEOC cites in support of its mistaken argument that *Mach Mining* undermines *CRST I*, the agency is simply citing cases from other circuits that reached a different conclusion the Eighth Circuit. None of those cases actually holds that *CRST I* is no longer good law. And given the post-*Mach Mining* decision by the Eighth Circuit in *CRST IV*—which relied on and reinforced the correctness of *CRST I* by approving an attorneys' fees award against the EEOC—any such statement by another circuit is irrelevant anyway. The Court should therefore disregard the cases the EEOC discusses on pages 20-21 of its response. They appear to be incorrectly decided, and do not change the law within the Eighth Circuit in any event.

The EEOC's reliance on *General Tel. Co. of the Northwest*, 446 U.S. 318, is likewise misplaced. The holding there was that the EEOC can pursue claims on behalf of a group of individuals, colloquially called a "class," without satisfying the Rule 23 class-certification

14

standards.[5]  BNSF does not disagree with that principle and is not saying the agency lacks authority to sue on behalf of a group. Rather, as *CRST I* held, the law permits suit only for those claims the agency actually learns of and investigates during the pre-litigation processes.  The Supreme Court did not address that issue in *General Tel. Co.*, and that decision is, of course, not an intervening decision that could be used to undermine *CRST I* anyway.

Finally, the EEOC argues that there is no "need for the agency to identify class members by name at this early stage" because, it asserts, the "class" is confined, and BNSF can figure out who the women are based on the purported specificity in the examples of claims described in the Amended Complaint. (Doc. 17, p. 22.)  The EEOC also attempts to distinguish *CRST I* on the basis that it would have been more difficult there for the employer to identify the "class." (Doc. 17, p. 23.)  Again, the EEOC is mistaken.  This is not a class action, as *General Tel. Co.* made clear.  It is an action on behalf of apparently numerous individual women whose claims must be individually proven by the EEOC.  And the EEOC is limited to suing on behalf of those individuals it learned of and investigated during the pre-litigation agency proceedings.  There thus is no reason why the agency should not now identify those women in the litigation complaint.  As to the agency's efforts to distinguish *CRST I* factually, although immaterial because they conflict with the legal rule announced in *CRST I*, the EEOC fails to recognize the highly individualized nature of hostile work environment claims.  Identifying those who do and do not meet that standard would be a substantial task, and it would still not tell BNSF which women the EEOC is suing on behalf of within the confines of the *CRST I* rule.  Nor should BNSF have to investigate to discern the

---

[5] In light of that holding, the EEOC's reliance on the Ninth Circuit's comparison of EEOC lawsuits to litigants in private class actions, (Doc. 17, p. 20), is off-base.  The point of *General Tel. Co.* is that EEOC lawsuits are *not* class actions.  That is particularly true of section 706 lawsuits like this one as the Eighth Circuit made clear in both *CRST I* and *CRST II*.

15

identities of those on whose behalf the EEOC is suing. Because under *CRST I*, the agency can sue only on behalf of women it specifically learned of during the pre-litigation process, there is simply no reason for the EEOC to refuse to identify those women at this point.

The EEOC's arguments attempting to avoid *CRST I* and the natural consequence of that decision are a remarkable example of an administrative agency trying to deny or undo multiple losses before the Eighth Circuit and the Supreme Court and to expand its powers far beyond what the Eighth Circuit has made clear Congress intended. Importantly, this is a legal issue that transcends BNSF's motion to dismiss. The Court should confirm that the *CRST I* legal principle is still valid and that the EEOC cannot sue on behalf of anyone it did not discover during its pre-litigation investigation. The consequence of that holding is that the EEOC should be required to identify those on whose behalf it sues in the complaint. Doing so is also necessary to provide fair notice to BNSF of the claims. But even if the Court disagrees and declines to dismiss on that ground, it should nevertheless reaffirm the *CRST I* legal principle and order the EEOC to separately disclose the names to BNSF under the Court's Rule 16 authority.

V.     **The Time-Barred Aspects of the Amended Complaint Are Ripe for Dismissal.**

Regarding BNSF's alternative request that the Court dismiss the time-barred aspects of the EEOC's allegations, the EEOC recognizes that it must rely on the continuing violation doctrine for any alleged conduct occurring 300 days before Merker's charge filed with the agency.[6] (*See* Doc. 17, p. 18.) But the agency fails to meet its pleading burden to rely on that doctrine. First, the agency attempts to avoid the limitations bar by characterizing its complaint as a single claim

---

[6] BNSF previously identified the cutoff date as March 24, 2017, based on the EEOC's allegation that Merker filed her charge on January 18, 2018. (Doc. 10, ¶ 34.) The charge attached to the Amended Complaint shows a January 17, 2018 filing date, which establishes the cutoff as March 23, 2017. (*See* Doc. 10-1.)

16

of an "ongoing" hostile work environment at BNSF's Alliance facility rather than separate claims of harassment. (*See id.*) While BNSF is not, at this point, challenging whether the alleged "similarly aggrieved women" can rely on Merker's EEOC charge, BNSF *does dispute* that such women can rely on conduct they did not experience, and which does not form part of their hostile work environment claims, for the continuing violation doctrine. *See EEOC v. Rock-Tenn Servs. Co.*, 901 F. Supp. 2d 810, 823-24 (N.D. Tex. 2012) (EEOC required to show that each individual suffered from an act of harassment contributing to hostile work environment within 300 days of charge). Moreover, this argument flies in the face of *CRST*. "*Morgan* does not permit the EEOC to use some [allegedly aggrieved persons'] timely charges to support other [allegedly aggrieved persons'] entirely untimely claims." *CRST*, 615 F. Supp. 2d 867, 879 (N.D. Iowa 2009) (internal quotations omitted); *see also CRST II*, 774 F.3d at 1178-79 (rejecting the EEOC's argument that it had asserted a single claim for sexual harassment and holding that, given the applicable law, what the agency actually asserted were multiple distinct claims).

Second, by failing to delineate what conduct occurred as to what individual, the EEOC has not adequately pleaded a claim under the continuing-violation doctrine. The Court can and should dismiss the allegations of the Amended Complaint that are time-barred on their face. The onus is on the EEOC to plead sufficient facts to make its claims plausible, including application of the continuing violation doctrine for conduct occurring before March 23, 2017. *See Christensen v. Cargill, Inc.*, 2015 U.S. Dist. LEXIS 132475, *22-*25 (N.D. Iowa Sept. 30, 2015) (granting motion to dismiss for allegations more than 300 days before charge because the plaintiff "failed to allege facts to constitute a continuing violation"). A court can dismiss a complaint on a motion to dismiss when the complaint itself demonstrates the application of the limitations period. *See Weatherly v. Ford Motor Co.*, 994 F.3d 940, 942-944 (8th Cir. 2021) (determination of the statute

of limitations is appropriate on a motion to dismiss when the plaintiff has pleaded facts demonstrating the defense).

By listing its allegations in an attempt to fall under the doctrine, the agency shows its inapplicability. (*See* Doc. 17, pp. 18-19.) The agency's allegations span a multitude of time periods, actors, and types of conduct and conditions. (*See id.*) The continuing violation doctrine was not meant to apply so broadly. The premise of the doctrine is that a hostile work environment is made up of repeated conduct that is "part of one unlawful employment practice." *See* [Nat'l R.R. Pass. Corp. v. Morgan](), 536 U.S. 101, 117-18 (2002). To make up "the single unlawful practice," the conduct must be "so similar in nature, frequency, and severity" as to be considered "part and parcel" of the same hostile work environment. *See* [Wilkie v. Dept. of Health and Human Servs.](), 638 F.3d 944, 952 (8th Cir. 2011); [CRST](), 615 F. Supp. 2d at 880-82 (refusing to apply continuing violation doctrine to alleged sexual harassment by different actors, in different workplaces, and different circumstances). But the EEOC's allegations involve different time periods, actors, work locations, and types of conduct, which affirmatively shows that the continuing violation doctrine does not apply.

Accordingly, if the Court does not dismiss the Amended Complaint in its entirety, the Court should dismiss all claims asserted by the EEOC to the extent they rely on conduct occurring before March 23, 2017.

## **CONCLUSION**

The EEOC has apparently learned nothing from the *CRST* cases despite being ordered to pay millions in attorneys' fees. Its response shows a clear intent to stick with its strategy of arguing for claims it has not investigated and fishing for additional claimants and violations in discovery. The Amended Complaint is the product of these tactics. Rather than focusing on each allegedly

18

aggrieved individual's experience, the EEOC attempts to make a claim out of conduct in the aggregate. But that approach does not recognize the nature of or the pleading requirements for claims under section 706. The Amended Complaint fails to plausibly allege that Merker experienced severe or pervasive harassment for more than a decade. And the agency's refusal to identify the alleged "similarly aggrieved women" or even to frame its allegations to differentiate between them means that BNSF, and the Court, are unable to assess the relevance of any of the EEOC's allegations pertaining to women other than Merker. BNSF therefore respectfully requests that the Court dismiss the Amended Complaint.

DATED this 21st day of February, 2022.

        BNSF Railway Company,
        Defendant

By:   */s/ Nichole S. Bogen*
      Nichole S. Bogen, #22552
      Tyler K. Spahn, #25308
      LAMSON DUGAN & MURRAY LLP
      701 P Street, Suite 301
      The Creamery Building
      Lincoln, NE 68508
      Telephone: (402) 397-7300
      Telefax: (402) 475-9411
      nbogen@ldmlaw.com
      tspahn@ldmlaw.com

      And

      Bryan P. Neal
      Holland & Knight LLP
      One Arts Plaza
      1722 Routh Street, Suite 1500
      Dallas, TX 75201
      Telephone: (214) 969-1762
      Telefax: (214) 969-1751
      bryan.neal@hklaw.com

      ATTORNEYS FOR BNSF RAILWAY
      COMPANY

**CERTIFICATE OF COMPLIANCE**

In accordance with NECivR 7.1(d), I hereby certify that this brief contains 6494 words, which includes all text, including the caption, headings, footnotes, and quotations as determined by Microsoft Word for Office 365.

By: */s/ Nichole S. Bogen*
      Nichole S. Bogen

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system which sent notification of such filing to all counsel of record.

By: */s/ Nichole S. Bogen*
      Nichole S. Bogen