IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EQUAL EMPLOYMENT ) <br> OPPORTUNITY COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BNSF RAILWAY COMPANY, ) <br> ) <br> Defendant. ) | Case No. 21-369-BCB-SMB <br><br> PLAINTIFF EEOC'S BRIEF <br> OPPOSING DEFENDANT'S <br> MOTION TO DISMISS <br> PLAINTIFF'S SECOND <br> AMENDED COMPLAINT |

INTRODUCTION

Plaintiff EEOC filed a Complaint in this matter in September 2021, alleging that from October 2011 to the present, Defendant BNSF Railway subjected conductor Rena Merker and other "similarly aggrieved women working out of Defendant's Alliance, Nebraska railyard" to a near daily barrage of sexually harassing conduct by both coworkers and supervisors. Doc. 1, ¶ 16. The conduct included sexual comments, derogatory comments and slurs about women, circulation of nude pictures and photographs, and other sexual and hostile actions toward female employees. *Id*. BNSF moved to dismiss the complaint and the EEOC filed a First Amended Complaint in response. Doc. 10.

BNSF moved to dismiss the First Amended Complaint. The Court denied Defendant's motion on all grounds save one: the Court found EEOC's First Amended Complaint did not adequately plead "that all the female employees referenced in the Amended Complaint suffered similar acts of similar discrimination" or "indicate the size of this group." Doc. 28, p. 23. Noting that nothing should prevent the EEOC from indicating the size of the group of aggrieved individuals and alleging "that they faced

similar acts of discrimination," the Court gave EEOC leave to amend to do so. Doc. 28, p. 23. The Court found EEOC's pleading adequately alleged the core elements of a hostile work environment sexual harassment claim.[1]

EEOC's Second Amended Complaint does both things. It provides BNSF and the Court with information refining the size and scope of the group of similarly aggrieved individuals and the time-frame in which the sexual harassment occurred. It also adds the specific narrative allegations of four individual female employees who are members of the group of similarly aggrieved women as exemplars. The complaint describes aspects of the hostile environment it clearly alleges were experienced by Merker, the examplars, and other female employees in the group of aggrieved individuals. Because EEOC's Second Amended Complaint fully meets the Court's requirements, the Court should deny Defendant's motion.

## ARGUMENT

EEOC's Second Amended Complaint gives all information necessary to give BNSF full notice of the nature of the claimed violation of Title VII and the parameters of the group of aggrieved individuals harmed by it. The allegations "rise above the speculative level as required by *Twombly* and *Iqbal*" and give BNSF fair notice of the charges against it because they "specifically detail the scope of the claim by identifying the time

---

[1] The Court found EEOC's First Amended Complaint adequately alleged: factual content allowing the Court to draw a reasonable inference that discrimination is occurring to a group of 'persons aggrieved' for which the EEOC can seek relief; that several female employees at the Alliance railyard, like Merker, faced conduct that was unwelcome and affected a term, condition, or privilege of their employment; that the harassment targeted female employees because of their sex; and that BNSF knew or should have known about the harassment. Doc. 28, p. 20-21.

2

period at issue, the alleged perpetrator of the discrimination and the alleged discriminatory conduct." *E.E.O.C. v. PMT Corp.*, 40 F. Supp. 3d 1122, 1129–30 (D. Minn. 2014). EEOC's Second Amended Complaint includes "1) the statutes defendant allegedly violated; 2) the time frames of the alleged violations; 3) the identity of the alleged perpetrators; 4) the name of one presently identified victim and a description of the class of aggrieved persons ; 5) the specific claims alleged and their elements as to [the charging party] and the class of aggrieved persons; 6) the types of defendant conduct to which [the charging party] and the class were subjected; and 7) the remedies being sought." *E.E.O.C. v. 5042 Holdings Ltd.*, 2010 WL 148085, at *4 (N.D. W. Va. Jan. 11, 2010) (holding complaint sufficiently stated a claim as to unnamed aggrieved individuals).

## I. EEOC's Second Amended Complaint places BNSF on notice of the size of the group of aggrieved individuals.

EEOC's Second Amended Complaint meets the Court's requirement that the agency "plead sufficient facts for the defendant to ascertain the relative size of the group for which [it] is making a claim." Doc. 28, p. 18. The complaint identifies the scope of the potential aggrieved individuals as women working in Trainmen, Yardmen, Engineer (TY&E), and Yardmaster positions at its Alliance, Nebraska facility from March 23, 2017 to the present. Doc. 41 ¶ 22. BNSF knows how many women it employed in those positions during that timeframe.

The complaint also alleges information from which an approximate number may be estimated. Based on information known to EEOC, admitted by BNSF, or upon

3

information and belief, BNSF currently employs approximately 485 individuals in TY&E positions and approximately eight to ten Yardmasters work in the Alliance, Nebraska railyard at any given time, for a total of approximately 493 to 495 employees in these job categories at any given time. Doc. 41, ¶21. Approximately five percent or fewer of these employees at Defendant's Alliance facility at any given time since 2016 were or are female. Doc. 41, ¶ 21. Five percent of 495 is 25, so one could estimate that approximately 25 women work in TY&E and Yardmaster positions at any given time. While the complaint does not allege a specific rate of turnover among TY&E and Yardmaster positions, BNSF should be able to identify with its own records exactly the number of women who held TY&E and Yardmaster positions during the actionable time period.

The complaint further narrows the scope to the subset of potential aggrieved individuals for whom EEOC may seek relief:

> In this suit, the Commission seeks relief for women who worked in TY&E and Yardmaster positions from March 23, 2017 to the present *who were subjected to a severe or pervasive unwelcome, offensive hostile work environment because of their sex*, created by the actions of men who worked out of the Alliance railyard in TY&E and Yardmaster positions, and in supervisory and management positions related to and above the TY&E and Yardmaster jobs.

Doc. 41, ¶ 22 (emphasis added). [2] While not every woman who worked in these positions in the relevant time period may have suffered actionable harassment (given the subjective nature of the analysis for each individual), this maximum number of potential

---

[2] Evidence of harassing conduct pre-dating March 23, 2017 provides background which can be used as evidence in this case. However, the EEOC only seeks relief in this suit for aggrieved individuals who suffered at least one instance of sexual harassment after March 23, 2017.

4

aggrieved individuals and the statutory caps on individual damages in Title VII cabin Defendant's potential liability.

Less specificity than this has been accepted by several district courts in Rule 12 challenges to complaints in EEOC enforcement actions alleging a group of aggrieved individuals. In the *E.E.O.C. v. 5042 Holdings* case noted above, for example, the EEOC pled that multiple women working at the defendant's inn were harassed. The defendant brought a Rule 12(e) motion for a more definite statement asking that EEOC be required to fully identify individual persons aggrieved. The court denied the motion, concluding EEOC's pleading was sufficient because it included, as quoted above, one named individual and a description of the class of aggrieved persons as well as information on the timing, perpetrators, types of harassing conduct, the claims, and their elements as to the named individual. 2010 WL 148085, at *4. Similarly, the court in *EEOC v. PMT Corp.*, found allegations informing an employer of the nature, extent, location, time period, and persons involved in the unlawful conduct sufficient "to allow the employer to reasonably estimate the number and identities of persons who may be impacted." 40 F. Supp. 3d at 11. The court quoted from the court's order in *EEOC v. Original Honeybaked Ham Co. of Ga.*, 918 F. Supp. 2d 1171, 1180 (D. Colo. 2013), a similar case in which the court noted that the defendant (like BNSF here) did not argue it was unable to ascertain the potential aggrieved individuals impacted by looking at its own records. 40 F. Supp. 3d at 1180.

**II. EEOC's Second Amended Complaint sufficiently alleges that this identifiable group of female employees worked (and in some cases still work) in the same hostile work environment in BNSF's Alliance railyard.**

EEOC's Second Amended Complaint meets the Court's requirement that it provide sufficient factual information for the Court to determine whether "the female employees referenced in the Amended Complaint suffered similar acts of similar discrimination by the same actors during the same time frame."[3] Doc. 28, ¶ 18.

### A. Merker, the examplars, and other aggrieved individuals faced the same or similar discrimination.

EEOC alleges that the group of "persons aggrieved" faced similar discrimination. With the added narrative allegations of the four exemplar aggrieved persons, the facts in the complaint show that Rena Merker, Jane Doe, Sally Doe, Tina Doe, and other aggrieved individuals experienced the same or similar types of sexual harassment in BNSF's railyard in Alliance. They were, for example, subjected to come-ons or offensive or sexualized comments about, or touching of, their bodies. Doc. 41, ¶ 25 (a)-(b) (Merker), ¶ 53, 55 (Sally Doe), ¶ 59, 60 (Karen Doe), ¶ 72, 87 (others). Multiple women were subjected to comments belittling them or indicating hostility toward them because

---

[3] The Court derived this standard from cases in which courts analyzed whether individuals seeking to intervene in EEOC enforcement actions who had not filed their own EEOC charges could "piggyback" on a charge filed by another individual. Doc. 28, p. 17 (citing cases). Those courts have required that the intervenor present what they termed an "identical" or "nearly identical" claim to the charging party. Plaintiff EEOC does not necessarily agree that these cases are applicable. As the Court noted, however, these courts defined an "identical" claim to be one alleging "similar discrimination by the same actors during the same time frame." Doc. 28, p. 17. As discussed in this brief, EEOC's allegations meet that standard.

6

they are female. Doc. 41, ¶ 25 (c)-(d) (Merker), ¶ 54, 56 (Sally Doe), ¶ 60, 63 (Karen Doe), ¶ 66-69 (Tina Doe), ¶ 72, 83-85, 87 (others). They worked among offensive sexualized graffiti and/or were shown nude pictures of female coworkers. Doc. 41, ¶ 34-35, 76 (Merker), ¶ 46, 47 (Jane Doe), ¶ 62 (Karen Doe), ¶ 70-71 (Tina Doe), ¶ 72, 73, 74, 75, 77 (others). Many had to work in unsanitary conditions made more so by male coworkers as an expression of their hostility toward their female coworkers. Doc. 41, ¶ 30, (Merker), ¶ 44 (Jane Doe), ¶ 78-82 (Merker, the exemplars, and others). They all worked in the hostile work environment described in paragraphs 72-87, and the Complaint specifically alleges that the aggrieved individuals did too. *See id.* and ¶¶ 72, 78, 83.

It can further be inferred from specific allegations that any woman who used the women's locker room, used one of the exits from the main building in Alliance, or worked on locomotives was subjected to the same or similar crude and offensive images. These include the picture of a woman sucking a penis in the women's locker room, the framed photograph of a man with his penis hanging out at the exit, and the ubiquitous drawings of male and female genitalia and gender slurs on BNSF's locomotives. Doc. 41, ¶¶ 74 (locker room), ¶ 77 (exit), and, e.g., ¶¶ 73, 75, 76 (locomotives). All women who parked in BNSF's lot on the day a nude photograph of a male employee's wife was placed on car windshields was exposed to the same photograph. Doc. 41, ¶ 35. Any woman who worked on locomotives – including all Engineers and Conductors – long enough to need to use the bathroom on board would be subjected to the same ongoing pattern of male workers soiling the unisex locomotive rest rooms to make them

7

unsanitary or unusable by women. Doc. 41, ¶¶ 78, 82. If any of those women avoided using bathrooms on the locomotives as result, she risked developing urinary tract infections. *Id.* at ¶ 82 (multiple women in TY&E positions suffered UTIs).

### B. A common group of harassers created and maintained the hostile environment to which the aggrieved individuals were subjected.

The hostile work environment experienced by the aggrieved individuals was created by the same coworkers or supervisors working in the same division and crafts at the same BNSF location. Doc. 41, ¶ 17. Many male TY&E employees in the Alliance railyard contributed to the hostile work environment, and their actions were repeatedly condoned — and sometimes fostered — by supervisory and management personnel above them. Doc. 41, ¶ 17-19. All these workers reported to Jeff Stevens, the Superintendent for the Alliance facility, who received multiple reports from multiple women about the harassing conduct. *Id.* ¶¶ 38, 70, 94. The focus of a sexual harassment case involving a hostile environment that has existed continuously for a long period of time is not on a particular individual harasser or harassers. The focus is on BNSF as a company, including its knowledge of the harassment and failure to take effective action to prevent or correct it.

### C. The aggrieved individuals suffered harassment during the same time period.

EEOC has consistently alleged that BNSF created a sexually hostile work environment at its Alliance, Nebraska railyard from at least October 2011 through the present. Doc. 41, ¶ 9-11, Exh. 2 (Letter of Determination); Doc. 1, ¶ 16; Doc. 10, ¶ 16.

8

EEOC's First Amended Complaint alleged facts throughout that time period, and the Court rejected BNSF's argument that evidence of events prior to 300 days before Ms. Merker's charge are time-barred because EEOC sufficiently pled a continuing violation. Doc. 10, ¶ 16; Doc. 41, p. 6-7.[4] EEOC's Second Amended Complaint specifies that the aggrieved individuals for whom the agency seeks relief experienced a sexually hostile work environment after March 23, 2017, and that "[s]ome acts of harassment that contributed to a sexually hostile work environment . . . occurred prior to March 23, 2017 and, for some women, as far back as October 2011." Doc. 41, ¶ 22-23.

## CONCLUSION

The Court correctly found that the EEOC was not required at the pleading stage "to proffer detailed allegations outlining every single time Merker experienced harassment." Doc. 28, p. 11. The same is true of the agency's allegations regarding other aggrieved individuals. At the pleading stage, the agency is not required to proffer detailed allegations outlining every instance in which an aggrieved individual experienced harassment. The Second Amended Complaint gives BNSF sufficient information to assess its potential liability and gives the Court sufficient information to decide any potential motion to intervene by an individual aggrieved person and to assess questions of proportionality in discovery. The Court should deny BNSF's third Motion to Dismiss and allow the case to proceed to a determination on the merits.

---

[4] *See also* Second Amended Complaint ¶ 101 (alleging sexually hostile work environment from at least October 11, 2011 to the present constitutes a continuing violation).

Date: June 10, 2022                         s/Lauren W. Johnston

Lauren W. Johnston, OK Bar No. 22341
Equal Employment Opportunity Commission
Oklahoma City Area Office
215 Dean A. McGee Ave., Suite 524
Oklahoma City, OK 73102
Phone: (405) 666-0379
Fax: (314) 539-7895
lauren.johnston@eeoc.gov

Lisa C. Stratton, MN Bar No. 236858
Equal Employment Opportunity Commission
Kansas City Area Office
400 State Ave., Suite 905
Kansas City, KS 66101
lisa.stratton@eeoc.gov
Phone: (913) 359-1809
Fax: (314) 539-7895

**Attorneys for Plaintiff EEOC**

## Certificate of Service

I certify that on June 10, 2022, this document was filed with the Clerk of Court and, by operation of the ECF system, a copy served on:

*Bryan P. Neal*   bryan.neal@hklaw.com, jerry.graham@hklaw.com, mary.caswell@hklaw.com, sherri.rodgers@hklaw.com

*Lily L. Ealey*   lealey@ldmlaw.com

*Nichole S. Bogen*   nbogen@ldmlaw.com, ldmnotices@ldmlaw.com, lealey@ldmlaw.com, sseeba@ldmlaw.com

                                        s/Lisa C. Stratton

                                        Attorney for Plaintiff EEOC