IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | Case No. 8:21-CV-369 |
| Plaintiff, | ) ) | DEFENDANT'S REPLY IN SUPPORT OF MOTION TO |
| vs. | ) ) ) | DISMISS IN PART PLAINTIFF'S SECOND |
| BNSF RAILWAY COMPANY, | ) ) | AMENDED COMPLAINT |
| Defendant. | ) | |

Defendant BNSF Railway Company ("BNSF") submits this Reply in Support of its Motion to Dismiss in Part Plaintiff's Second Amended Complaint.

## INTRODUCTION

The Equal Employment Opportunity Commission ("EEOC") has done nothing to show that it satisfied the requirements the Court set out in its April 15, 2022 Order dismissing EEOC's claims on behalf of female employees other than Rena Merker. *See* (Doc. 28 at 15) ("Dismissal Order"). As to the similarity pleading requirement, the agency lobs various allegations about a wide range of alleged conduct but with no semblance of an effort to show that the same or similar alleged conduct affected particular other individuals. Nor has the agency made any effort to show that it satisfied the same-actor pleading requirement; instead EEOC appears to simply disagree with the Court's previous order on that issue. Finally, instead of pleading facts to indicate the size of the group, as the Court required, EEOC simply argues that it has presented facts from which BNSF could discern the total number of women in the jobs at issue but with zero indication of how many of those women the agency is actually alleging were subjected to unlawful conduct.

The Court did not set a high burden. That is especially so for a federal government agency whose primary role is investigating and attempting to resolve claims before it files lawsuits.

Indeed, EEOC is a uniquely situated plaintiff that has the ability, resources, and obligation to thoroughly investigate before suing and to give fair notice when it does sue. EEOC's unwillingness or inability to plead the straightforward things the Court required shows that the agency likely took a "sue first, ask questions later" approach, contrary to its express statutory mandate, and contrary to its public role in which it should be pursuing justice, not "victory at all costs." But more to the point for the present motion to dismiss, the agency's failure to satisfy the Court's requirements means that it has not adequately alleged a claim on behalf of a group of individuals. The Court should therefore dismiss all claims on behalf of any individual other than Rena Merker.

## ARGUMENT

**I.  EEOC HAS NOT SATISFIED THE PLEADING REQUIREMENTS FOR OTHER FEMALE EMPLOYEES.**

The first requirement for EEOC is to plead—sufficiently, with facts not conclusions—that the other women "suffered similar acts of discrimination," meaning they "suffered from the same unlawful conduct perpetrated by the same actors (or group of actors) in the same time frame." Dismissal Order at 19-20. The agency unquestionably did not satisfy that standard. In contending otherwise, EEOC barely addresses, if at all, BNSF's arguments in its motion to dismiss as to why the agency has not satisfied that standard. The Court should disregard that attempt to gloss over the problems BNSF pointed out.

### A.  "Exemplar" Allegations

BNSF acknowledged that EEOC's allegations regarding the four exemplars provided, as to those four women, some degree of greater specificity than the agency's previous complaint. BNSF then explained that those allegations nevertheless do not reflect that "all the female employees referenced in the Amended Complaint suffered similar acts of similar discrimination by the same actors during the same time frame" as required. Dismissal Order at 22. In particular,

2

although the agency describes various instances of alleged conduct as to those four women, some of the allegations do not include information about the actor or actors involved while some identify specific actors but give no indication whether they were or were not involved in the other alleged conduct involving the particular exemplar employee, much less any of the other exemplar employees or Merker. *See, e.g.*, Sec. Amend. Compl. ¶¶ 44-50, 53-56, 59-63, 64-71.

In response, EEOC ignores BNSF's argument entirely. The agency merges its discussion of the claimed exemplars and the other female employees and focuses on the "similar discrimination" aspect of the Court's ruling. (Doc. 55) ("EEOC Response") at 6-8. It only briefly mentions the "same actors" requirement. *Id.* at 8. And it does that only through glossing over the Court's requirement, using the term "common group," and citing paragraph 17 of the Second Amended Complaint. *Id.* Paragraph 17 simply says that alleged actors are men who worked out of the Alliance railyard in TY&E and Yardmaster positions and in supervisory and management jobs with authority over those employees. *See* Sec. Amend. Compl. ¶ 17; *see also id.* ¶¶ 17-19. Those allegations provide nothing from which it could be reasonably inferred that the same actors were involved in the conduct alleged as to the four exemplar employees.

In fact, EEOC appears to reject the Court's standard—or at least admit it cannot satisfy it—by stating that the focus of a sexual harassment claim "is not on a particular individual harasser or harassers" but on "BNSF as a company." EEOC Response at 8. To the contrary, sexual harassment claims are highly individualized, in fact turning on specific conduct by specific actors of which the company was aware but failed to remedy. But more than that, for purposes of the *pleading* requirements, this Court has already established "that 'persons aggrieved' in § 2000e-5 refers to a group of employees that suffered similar discrimination *by the same actors during the same time frame as the charging party*." Dismissal Order at 18 (emphasis added). Without similar

acts of discrimination being "perpetrated by the same actors (or group of actors) in the same time frame" the EEOC has not sufficiently alleged a claim on behalf of a group of "persons aggrieved." *Id.* at 19-10. Thus, EEOC cannot just gloss over the issue of *who* it contends engaged in the alleged conduct.

As BNSF previously pointed out, the Second Amended Complaint strongly suggests that the alleged conduct did *not* involve the same actors given that it includes some very specific statements regarding certain male employees but fails to mention those same employees with respect to the other alleged conduct. In any event, the agency has done nothing to satisfy that aspect of the requirement to adequately plead a claim on behalf of the group of individuals it describes as "exemplars." Therefore, the Court should dismiss the claims as to those four alleged exemplar employees.

B. **Allegations Regarding "Other Female Employees"**

EEOC fares even worse as to the broad allegations it makes for "other female employees," which it defines as female employees other than Merker and the "exemplars." *See* Sec. Amend. Compl. ¶ 72. Other than simply declaring that it has alleged similar harassment, the agency does little to satisfy that aspect of the pleading requirements as to women other than Merker and the four "exemplars." But the agency's conclusory assertions and arguments do not satisfy the pleading requirements.

First, as BNSF pointed out—now without any response by EEOC—the section of the Second Amended Complaint captioned "General Hostile Work Environment" (paragraphs 72-87) contains allegations very close to, and in some cases identical to, those the Court previously held were insufficient. Sec. Am. Compl. ¶¶ 72-87. Although the agency did add a few date references to those allegations, the few dates provided are spread out over a period of March 2017 to 2020.

4

*Id.* Moreover, the requirement of harassment in the same time frame is only one part of what the agency must plead. It must also allege that the group of women suffered similar discrimination. In other words, adding those few dates could not have resolved the problem the Court already identified in dismissing the claims on behalf of other women.

EEOC's failure to meet the similarity requirement was one problem the Court previously identified as a reason for dismissing those allegations: "Many of the EEOC's allegations do not say when the discriminatory acts occurred *or explain which female employee experienced what harassment*." Dismissal Order at 22 (emphasis added). True, there are various categories of harassment described in the Second Amended Complaint, just as there were in the First Amended Complaint. But just as before there is no indication which of the "other female employees" were exposed to which category or type of conduct. And the conduct is largely dissimilar, with some conduct described in general ways and other conduct very specific to only one or a small number of female employees. For example, paragraphs 79, 80, 81, 84, and 85 refer to alleged actions that appear to involve a specific woman, and each paragraph may or may not refer to the same woman. Still other allegations refer to alleged conduct appears to involve to additional women but there is no indication of "which female employee experienced what harassment." Dismissal Order at 22. And all of the allegations differ in the type of conduct involved. To say that those allegations assert "similar" conduct is entirely unsupported and conclusory. In no way do the allegations tell BNSF or the Court "who may have the statutory right to intervene." Dismissal Order at 18.

Second, another problem is the same one discussed above as to the exemplar employees: there is no effort to show that the various instances of alleged conduct described in the "General Hostile Work Environment" section were perpetrated by the same actors (either among those

allegations or as to the conduct alleged as to Merker).[1] Many allegations appear to have involved a single actor (*e.g.*, paragraphs 79, 81, 84, 85, and 87) but there is no indication whether that actor was or was not involved in allegations involving Merker (or the exemplar employees). Further, although not contained in the "General Hostile Work Environment" section, paragraph 91 of the Second Amended Complaint repeats an allegation about one alleged supervisory actor that the Court expressly addressed in its previous order, and one that is outside of the time period EEOC says it is relying on. *See* Dismissal Order at 22 n.6. In sum, EEOC saying "[m]any male TY&E employees in the Alliance railyard" (EEOC Response at 8) tells neither the Court nor BNSF anything about whether each allegation involved a different alleged perpetrator or a single person or some identifiable small group of individuals. Just as with the "exemplar" employees, EEOC has failed to even attempt to show that its pleadings involve alleged discrimination by the same actors.

At bottom—and as should be expected given that the allegations in the "General Hostile Work Environment" section track allegations the Court already said were insufficient—EEOC has not come close to satisfying the requirements set out in the Court's Dismissal Order as to the "other female employees." The new complaint "does not sufficiently allege that the other female employees suffered discrimination that arose from the same unlawful conduct from the same actors (or group of actors) in the same period." Dismissal Order at 22. Accordingly, the Court should also dismiss the allegations as to the "other female employees."

## II.    EEOC ALSO HAS NOT SATISFIED THE REQUIREMENT THAT IT INDICATE THE SIZE OF THE GROUP OF ALLEGED "PERSONS AGGRIEVED."

EEOC's argument on the second requirement for pleading a claim on behalf of a group of individuals fails to engage on the actual requirement the Court set out in the Dismissal Order.

---

[1] EEOC's assertion that it has provided the "identity of the alleged perpetrators," *see* EEOC Response at 3, is also incorrect. It has done no such thing.

Specifically, the Court stated that the Complaint must "indicate[] the size of th[e] group." Dismissal Order at 19. EEOC argues that it satisfied that requirement because (1) it pleaded information about the total number of female employees at any given time in the job categories at issue; and (2) BNSF can "identify with its own records, the exact number of women who held TY&E and Yardmaster positions during the actionable time period." EEOC Response at 4. That approach misses the mark.

Taking the last point first, the Court did not say that the agency must provide enough information so that BNSF can with some effort and information outside of the complaint piece together the size of the group. It said the *complaint* must indicate the size of the group. It is not sufficient to have a complaint merely set up a puzzle that BNSF must solve before it knows the extent of its liability. The agency's "figure it out" approach does not give BNSF fair notice of the claim as required by the Court's Dismissal Order.

Even setting that problem aside, however, there is a more fundamental problem that spans both of EEOC's responses: the agency has not and does not purport to either state the actual size of the group or even to provide sufficient information so that BNSF could on its own determine the actual size of the group. That is because what EEOC has done is set up numbers from which it says BNSF could determine the total number of female employees in TY&E and Yardmaster jobs. That is a different matter than the size of the group EEOC is alleging was subjected to a hostile work environment and for that reason fails to satisfy the size requirement of the Dismissal Order.

EEOC's own description of its pleading show its inadequacy. In its response, the agency says that the "complaint identifies the scope of the *potential* aggrieved individuals." EEOC Response at 3 (emphasis added). It likewise claims that by including the time frame of March 23, 2017 to the present the complaint further narrows the scope of the "potential aggrieved

7

individuals." *Id.* at 4. The *actual* aggrieved individuals are described as whichever women "were subjected to a severe or pervasive unwelcome, offensive hostile work environment." *Id.*; *see also id.* at 7 (similarly describing alleged aggrieved individuals based on whether or not they were exposed to certain alleged conduct). The agency further acknowledges that what it has done is provide (it claims) a "maximum number of potential aggrieved individuals." *Id.* at 4-5. EEOC then expressly confirms that it is *not* suing on behalf of all of the women in the specified jobs: "not every woman who worked in these positions…may have suffered actionable harassment (given the subjective nature of the analysis for each individual)…." *Id.*

That approach is wholly inadequate. All EEOC has done is to plead the total number of women in the relevant jobs and then to say that the number of women it contends were actually subjected to actionable harassment—that is, the "persons aggrieved"—is some unknown subset of the total. But the Court did not say EEOC need only provide BNSF with the *outer limits* of what the group might be, something BNSF already could have figured out on its own at the time of the first ruling. Nor did the Court say that EEOC could dodge the requirement by saying the actual number of women it alleges are in the group is however many of the women in those jobs "were subjected to a severe or pervasive unwelcome, offensive hostile work environment." The answer to that inquiry is precisely what EEOC is supposed to be pleading. EEOC is supposed to indicate the size of the group ***the agency is alleging in fact was*** subjected to a hostile work environment— that is, as the Court said, "the relative size of the group *for which the EEOC is making a claim*" and "the number of people who *are* 'persons aggrieved.'" Dismissal Order at 18, 19 (emphasis added). EEOC's approach leaves entirely open how many individuals EEOC contends are in the

8

group it is alleging were treated unlawfully. That hedging does nothing to satisfy the Court's requirement.[2]

Just as with the First Amended Complaint, the Second "Amended Complaint gives the Court no idea of the size of the group of female employees *at issue in this suit*." Dismissal Order at 22 (emphasis added). True, it may not be thousands. But neither BNSF nor the Court—nor, it seems, the agency—knows whether the approximate number is 5, 6, or some number between 5 and greater than 25, depending on employee turnover from 2017 to the present. And with a $300,000 damages cap per individual and certain potential monetary relief not subject to that cap, the range is far too large to be said to provide BNSF with fair notice of its liability. Likewise, the range is far too large for the Court to meaningfully apply a proportionality standard. *See id.* at 19. EEOC's failure to plead facts that indicate the size of the group of women it contends was subjected to a hostile work environment again fails to satisfy the requirements the Court set out in the Dismissal Order

Finally, EEOC cites three cases it says support its view that it has pleaded enough. *See* EEOC Response at 5. The agency had previously cited two of those cases in its brief before the Court issued the Dismissal Order. (Doc. 17 at 6 & 22).[3] The Court already considered those cases, neither of which involved the standard applicable for intervention on which the Court relied or the

---

[2] Although Rule 23 requirements do not apply to EEOC, BNSF notes that the problem with EEOC's approach is similar to the manageability problem with a "fail-safe class," a class definition that incorporates a disputed liability element. *See, e.g., Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021). Just as such a class is considered unmanageable (among other problems) under Rule 23, it is insufficient to satisfy EEOC's burden to provide pleadings that indicate the size of the group at issue in the lawsuit.

[3] *See EEOC v. PMT Corp.*, 40 F. Supp. 3d 1122 (D. Minn. 2014); *EEOC v. Original Honeybaked Ham Co. of Ga.*, 918 F. Supp. 2d 1171 (D. Colo. 2013).

pleading requirements this Court set out in the Dismissal Order.[4] The third case is just as unhelpful. *See EEOC v. 5042 Holdings Ltd.*, 2010 WL 148085 (N.D. W. Va. Jan. 11, 2010). It involved a disfavored motion for a more definite statement, not a Rule 12(b)(6) motion to dismiss. And it involved a different issue than the one now before the Court—whether EEOC had to individually name each person on whose behalf it sued. Although BNSF previously argued that issue, the Court declined to impose that requirement, and it is not the basis of BNSF's present motion to dismiss. At bottom, none of the three cases addresses the standards this Court set out in the Dismissal Order, and therefore they do not support EEOC's argument that it has satisfied those standards. Absent a granted motion for reconsideration, EEOC cannot avoid complying with the Court's requirements by citing cases that applied a different standard or involved a different issue.

## CONCLUSION

EEOC did not cure the problems that led the Court to dismiss the claims on behalf of women other than Merker. Just as before, "the EEOC has failed to adequately plead that all the female employees referenced in the [Second] Amended Complaint suffered similar acts of similar discrimination by the same actors during the same time frame or indicated the size of this group" as the Court concluded the agency must do. Dismissal Order at 22. The EEOC's latest Amended Complaint "makes it uncertain which female employees at BNSF could intervene, frustrates the requirement that BNSF must have notice of the EEOC's claim and the extent of its exposure to liability, and would have a detrimental effect on efficiently adjudicating the EEOC's suit." *Id.* For

---

[4] Moreover, the passage from the *Original Honeybaked Ham* case that EEOC relies on consists of comments that out-of-circuit district court made in the course of *rejecting* Eighth Circuit precedent. Then, the in-circuit *PMT* decision cited that passage—only with a "cf." citation—after repeatedly pointing out that *PMT* was a pattern-or-practice case, an entirely separate type of claim that was not present in the Eighth Circuit precedent that *Original Honeybaked Ham* rejected and is not present here. Thus, even if the Court were willing to entertain EEOC's repeat reliance on those cases to argue for a different standard, that reliance is misplaced on the merits.

all those reasons, BNSF asks the Court to dismiss the claims in the Second Amended Complaint on behalf of female employees other than Rena Merker, with no further leave to replead.

DATED this 17th day of June, 2022.

                                      BNSF Railway Company,
Defendant

By:    */s/ Bryan P. Neal*
Nichole S. Bogen, #22552
Lily L. Ealey, #27210
LAMSON DUGAN & MURRAY LLP
701 P Street, Suite 301
The Creamery Building
Lincoln, NE 68508
Telephone: (402) 475-9400
Telefax: (402) 397-7824
nbogen@ldmlaw.com
lealey@ldmlaw.com

Bryan P. Neal
Holland & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
Telephone: (214) 969-1762
Telefax: (214) 969-1751
bryan.neal@hklaw.com

ATTORNEYS FOR BNSF RAILWAY COMPANY

**CERTIFICATE OF COMPLIANCE**

In accordance with NECivR 7.1(d), I hereby certify that this brief contains 3599 words, which includes all text, including the caption, headings, footnotes, and quotations as determined by Microsoft Word for Office 365.

By: */s/ Bryan P. Neal*
    Bryan P. Neal

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of June, 2022, I electronically filed the foregoing ***Defendant's Reply in Support of Motion to Dismiss in Part Plaintiff's Second Amended Complaint*** with the Clerk of the Court using CM/ECF system which sent notification of such filing to the below registered participants:

Lauren W. Johnston
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
Oklahoma Area Office
215 Dean A. McGee Ave., Suite 524
Oklahoma City, OK 73102
lauren.johnston@eeoc.gov

By: */s/ Bryan P. Neal*
    Bryan P. Neal